## BISSELL *v.* PEARCE.

A mortgagor of chattels has no right to pledge the property to another person, or otherwise to create a lien upon it, to the prejudice of the mortgagee's rights.

Where chattels were mortgaged to the plaintiff, in February, 1859, and the mortgage was duly filed in the town clerk's office, and in April, 1859, the mortgagor pledged or created a lien upon, a portion of the property, in favor of the defendant, for the expenses of keeping the mortgaged property ; *Held* that in the absence of any attempt to impeach the mortgage for fraud, the plaintiff's lien by virtue of it, was prior and paramount to that of the defendant.

The law, in the absence of any special agreement, will not give to a farmer who pastures horses, for hire, a lien upon the horses, for the price of keeping them.

The certificate of the town clerk in whose office a chattel mortgage is filed, stating that a paper is a copy of the original mortgage, is no proof of the existence of the mortgage. That must be produced and proved, or its non-production accounted for, so as to authorize secondary evidence.

Nor is the certificate of the town clerk any evidence that the paper purporting to be a copy of the mortgage is a copy. The mortgage, and its contents, must be proved by common law evidence.

ACTION for the conversion of a horse, tried by the court, without a jury. The pleadings are sufficiently noticed in the opinion of MARVIN, J. in connection with a question made upon them. The plaintiff claimed the horses as mortgagee, his brother Edwin being the mortgagor. He put in evidence, under objection and exception, a paper purporting to be a copy of a chattel mortgage, dated January 5, 1858, filed in the office of the town clerk of Hartland, Niagara county, January 6, 1858. This mortgage recited an indebtedness of $813, to secure the payment of which sum, in one year, the horse in question, and other property, were mortgaged. He also proved another mortgage, executed by Edwin to the plaintiff, dated January 13, 1859, reciting an indebtedness of $485, upon the balance of a debt which Edwin owed to the plaintiff, to secure the payment of which, the horse and

other property were mortgaged. No time for the payment of the money is specified. The court found these facts: The mortgages were given for a valuable consideration. On or about December 2, 1858, Edwin left the horse in question, and other horses, with the defendant, to be kept and fed through the winter, or until the spring of 1859, upon the agreement that Edwin should pay the defendant seven shillings per week for each of the horses during the time they should be kept by the defendant. The plaintiff knew that Edwin did not have the horses in his possession after December 1, 1858, and that they had been left somewhere to be wintered, and he did not seek for or demand the horses, until they had been wintered, and until three of them had been obtained from the defendant by Edwin. The mortgage was due before November, 1858, and the plaintiff, as between him and Edwin, was then the owner of all four of said horses, and the plaintiff allowed Edwin to keep the horses after the title became vested in the plaintiff; and on or about January 20, 1859, the plaintiff demanded the horses of the defendant under and by virtue of the mortgage of January 13, 1859, and the defendant refused to deliver up the horse until the keeping of the four horses had been paid for, to wit, $67 That when this demand was made the defendant had no knowledge of the first mortgage, nor had he any, until after this action was commenced. In April, 1859, when the other horses were taken away, it was agreed that the other horse in question should be left with the defendant as security for the keeping of all the horses. The court refused to find that the horses were left with the defendant upon an agreement between him and Edwin that they should remain with the defendant as security for their keeping, and the defendant excepted. As conclusions of law, the court decided, 1st. That the first mortgage was not canceled by the giving of the second one; 2d. That the plaintiff could claim under the first mortgage as against the defendant in this action; 3d. That the facts set up in the answer did not constitute a counter

claim, and therefore a reply was not proper; 4th. That the contract, as found, is no defense in this action; 5th. That the concealment of the mortgage and of the plaintiff's title, from the defendant, is no defense in this action; 6th. That the plaintiff is entitled to recover against the defendant, the value of the horse; 7th. That the plaintiff is entitled to judgment for $121 and costs; to each of which conclusions a separate exception was taken. Some exceptions were taken by the defendant, to the admission and rejection of evidence, which are sufficiently noticed in the opinions.

*C. G. White,* for the plaintiff.

*E. F. Bullard,* for the defendant.

MARVIN, J. Waiving, for a moment, the consideration of the questions raised by the exceptions, and excluding the first mortgage, and stating the case most favorably for the defendant, it will, in short, be thus: Edwin B. Bissell, the owner of the four horses, sold and mortgaged them, with other property, (another horse,) to the plaintiff to secure the payment of $485, the balance of a debt then owing by him to the plaintiff, the sale &c. to be void on the payment of the debt, no time for payment being specified. The mortgage was executed January 13, 1859, and duly filed. Edwin had previously, near the 1st of December, delivered the four horses to the defendant, upon an agreement that the defendant should keep and feed them during the winter, at the rate of seven shillings a week for each horse, which sum Edwin agreed to pay. The defendant was a farmer. In April, 1859, Edwin applied to the defendant, for the horses, and not being prepared to pay the defendant for their keeping, it was agreed between them that he should take one of the horses, and leave the one in question in this action, as security for the payment for the keeping of the four horses. In June, the plaintiff, under and by virtue of the mortgage, de-

manded the horse of the defendant, who refused to deliver
him until payment should be made for keeping the four
horses, $67, and therefore the plaintiff brought this action.
The defendant had no knowledge of the mortgage until the
demand was made.   I have said that the mortgage of Jan-
uary, 1859, was duly filed.   The case does not furnish any
evidence upon this question.   Nor was any point made upo
it at the trial, or on the argument here.   It is stated in the
opinion delivered in the Supreme Court that the mortgage
was duly filed.   It seems to have been so assumed.   The find-
ings of fact by the court are silent upon this question, and as
it is a rule of this court that the appellant must make his case
and have it settled, with such a statement of facts as will
show, necessarily, that the law is in his favor, otherwise
every intendment, not absolutely unanswerable in itself, will
be against him, (*Grant* v. *Morse*, 22 N. Y. Rep. 323,) and
as there is no finding in this case that the mortgage was
not filed, it will be assumed and intended that it was prop-
erly filed.

This statement of the case is its best argument, and a
decision, affirming the judgment, must follow, unless some
of the exceptions are material and valid.

The defendant was a farmer, and the law, in the absence
of any special agreement, gave him no lien upon the horses,
for the price or value of keeping them.   There was no special
agreement until April, creating a pledge or other lien upon the
horse in question, and this agreement was between Edwin
A. Bissell, the mortgagor, and the defendant, and in hostility
to the rights of the plaintiff, as mortgagee or owner of the
horse.   The plaintiff's rights were not affected by this agree-
ment.   Edwin had no right to pledge the horse, or otherwise
create a lien upon him to the prejudice of the plaintiff's
rights.

Let us examine the exceptions.   The plaintiff offered in
evidence a paper, purporting to be a copy of a chattel mort-
gage, dated January 5, 1858, with a certificate attached,

stating that, "the foregoing is a true copy of an original chattel mortgage, placed on file in the clerk's office of the town of Hartland, Niagara county, and state of New York, on the 6th day of January, 1858, at 7 o'clock, P. M. (Signed) H. G. Dean, town clerk of Hartland." The defendant's counsel objected on the ground that there was no proof of the genuineness of the signature of the clerk, or of the execution of the original mortgage. The objections were overruled, and the "paper" admitted in evidence, and the defendant excepted. The statute of 1833, ch. 279, relating to the filing of chattel mortgages, requires, under certain circumstances, that the mortgage, or a true copy, shall be filed in certain offices specified, generally a town clerk's office, and the officer filing the same is required to indorse thereon the time of receiving the same, and to deposit the same in his office. (§§ 1 and 2.) The next section relates to a renewed filing within thirty days next preceding the expiration of a year from the previous filing, "together with a statement exhibiting the interest of the mortgagee in the property claimed by him, by virtue of the mortgage." The fifth section is, "A copy of such original instrument, or of any copy thereof, so filed as aforesaid, including any statement made in pursuance of this act, certified by the clerk or register in whose office the same shall be filed, shall be received in evidence, but only of the fact that such instrument or copy, and statement, was received and filed according to the indorsement of the clerk or register thereon, and of no other fact; and in all cases the original indorsement of the clerk or register, made in pursuance of this act upon such instrument or copy, shall be received in evidence only of the facts stated in such indorsement." It is the copy of the mortgage filed, or any copy thereof filed, including any statement made by the mortgagee in pursuance of the act, which is to be received in evidence, when certified by the clerk. But evidence of what? The statute answers, of the fact, only, that such instrument, or copy, and statement, were received and filed

according to the indorsement of the clerk thereon, and of no other fact; and so also as to the original indorsement by the clerk, it is to be received in evidence only of the facts stated in such indorsement.  Such evidence is no proof of the existence of the mortgage.  That must be produced and proved, or its non-production accounted for so as to authorize secondary evidence.  Nor is the certificate of the clerk any evidence that the paper purporting to be a copy of the mortgage, is a copy.  The mortgage and its contents must be proved by common law evidence.  The statute relates to the filing of mortgages or copies, and renewed filing, and statement, and requiring the clerk to file the instrument, and to indorse thereon the time of receiving it.  The instrument filed, whether it be the original mortgage, or a copy, and the statement made exhibiting the interest of the mortgagee, &c., upon the copy of the mortgage filed, within the thirty days next preceeding the end of the year from the first filing, are to be received in evidence when certified by the clerk, and to prove the fact only that they were received and filed according to the indorsement of the clerk thereon; and so as to the original indorsement of the clerk, which will always appear upon the instrument so produced and certified.  If the mortgagee's claim rests upon the mortgage alone, the contingency for re-filing a copy not having happened, and the mortgage is produced in court, having upon it the original indorsement, made in pursuance of the act, no certificate is required.  As I understand, the "paper" purporting to be a copy of a chattel mortgage, was admitted in evidence, as evidence of an executed mortgage.  This was erroneous.

Notwithstanding the decision of the court was erroneous, and the exception well taken, the evidence was entirely immaterial, and the judgment should not be reversed on account of this error.  The plaintiffs title was perfect under the mortgage of January 13, 1859, and by virtue of which he claimed the horse, and the evidence received, of the prior

mortgage, could not possibly affect the case, or prejudice the defendant. The defendant was a witness in his own behalf, and on cross-examination was asked if he wrote, in a letter to Edwin B. Bissell, "If you had called on your way back from New York I would not have kept the horses." An objection was overruled and the defendant excepted. The witness answered that he thought he did write something to that effect. There was no error here. The question was put upon the cross-examination of the defendant, and was proper as testing his recollection, and as a foundation for impeachment, if the evidence was material. But I do not see that it was at all material whether he so wrote or not.

The defendant offered to prove that Edwin B. Bissell, at the time he got the horses in April, fraudulently stated to the defendant that he owned all the horses; and that he concealed the fact of the mortgage held by the plaintiff, and by these fraudulent acts he obtained possession of two of the horses. The evidence was excluded, and the defendant excepted. The same evidence was offered to affect the credibility of Edwin B. Bissell, and also to show fraud between him and the plaintiff. This was excluded, and the defendant excepted. The fraud of Edwin could not affect the plaintiff's title; nor could such representation and concealment tend to prove fraud in the plaintiff. Nor do I think the evidence proper for the purpose of impeachment, or to affect the credibility of Edwin B. Bissell, of whom no such questions had been asked. These questions were proper to be put to the witness Borst, and the evidence at best would have been mere heresay. There was no ground for these exceptions.

There are some exceptions to the findings of facts by the judge, upon conflicting evidence, which this court will not examine, and some exceptions to conclusions of law, none of which are well taken. Some of the findings of fact, and some of the conclusions of law, are quite immaterial. It was not error to refuse to find a fact as requested, and if

the weight of evidence was in favor of the requested finding, the exceptions would not be available in this court. The court decided that the facts set up in the answer did not amount to a counter-claim, and that a reply was not proper. Exception. The answer referred to, states that the horses were owned by Edwin B. Bissell, and then sets forth special agreements between the defendants and Edwin for the keeping of the horses and for a lien, &c. and demands judgment that the horses be sold for the payment of the lien, which facts, if true, constitute a perfect defense in the action; for the title of the plaintiff was directly in issue, and without proving title, general or special, in himself, and the right to the possession of the horse, the plaintiff could not recover. This answer was certainly unnecessary, as the plaintiff in his complaint necessarily alleged title in himself, and the denial answer put this allegation in issue. The facts stated in the answer were in no sense a counter-claim.

In conclusion, this case is the ordinary case where one unfortunately purchases or receives property from one having no title, and the true owner comes and demands his property of the possessor, and upon a refusal to deliver, brings his action for the conversion of the property. And unless the defendant was prepared to impeach the title of the plaintiff, he should have surrendered the horse and taken his remedies against his bailor.

The judgment should be affirmed.

SELDEN, J. Although it may be doubted whether all the conclusions of the court at special term in this case were correct, still I see no sufficient ground for a reversal of the judgment. The court has found that the agreement that the horse in question should be left with the defendant as security for the keeping of all the horses, was made in April, 1859, and expressly refused to find, that any agreement for a lien was made at the time when the horses were left with the defendant in December, 1858. This court can not look into

the evidence to see whether this refusal was right or wrong, but must take the facts as they are found. The defendant, therefore, can claim no lien prior to April, 1859, and as the second mortgage to the plaintiff was executed in February, 1859, and was duly filed in the town clerk's office, and as no attempt was made to impeach this mortgage for fraud, the plaintiff's lien by virtue of it was prior and paramount to that of the defendant. Hence all the evidence offered, and the decisions made, in reference to the first mortgage, were wholly immaterial, and could in no way affect the plaintiff's right to recover under the second mortgage, which was in no manner invalidated.

Whether the court was right or not, therefore, in admitting the copy of the first mortgage in evidence, or in holding as a conclusion of law that the plaintiff could claim as against the defendant under that mortgage, is of no importance in the case.

The proof offered of the fraudulent representations made by the mortgagor as to the ownership of the horses, and of his concealment of the existence of the mortgages, was clearly inadmissible.

The plaintiff was in no respect responsible for those representations. The only point upon which any doubt can exist, is that arising upon the admission of parol proof of the contents of the letter written by the defendant to the mortgagor. If the evidence thus obtained had been in any degree material, or could in any manner have affected the judgment rendered, I should be inclined to hold its admission erroneous. But it is obvious that it could have no such effect.

The judgment should therefore be affirmed.

All the Judges concurring,

Judgment affirmed.