Walter Scott et al., Respondents, *v.* James Delahunt et al.,
Appellants.

Where, after default in payment of the sum secured by a chattel mortgage
upon a canal boat, the owner with the knowledge and consent of the
mortgagee continues in possession, running the boat as his own, he is
authorized to keep her in repair, and can confer a right of lien thereon
for repairs necessary to make her fit for navigation.

A shipwright, therefore, to whom the boat has been delivered by the
owner, while it remains in his possession has a lien thereon for necessary
repairs, which lien is superior to that of the mortgage.

There is no distinction, in this respect, between a steamboat or vessel navi-
gating the ocean, or navigable waters connected therewith, and a canal
boat.

The shipwright is not confined to the remedy given by the act (chap. 482,
Laws of 1862) in reference to demands against ships and vessels; that
statute was intended mainly to give a remedy where the claimant was
not in possession, and does not affect the common-law lien of a ship-
wright in possession.

Nor is the priority of his lien affected by the provision of the act in rela-
tion to chattel mortgages upon canal boats (§ 5, chap. 412, Laws of 1864),
declaring that liens by chattel mortgage, filed as provided in said act,
shall have a priority over all other liens. The lien of the shipwright is
upheld upon the theory that it is made upon the implied authority and
consent of the mortgagee.

*Bissell* v. *Pearce* (28 N. Y., 252) distinguished.

(Argued October 2, 1874; decided January term, 1875.)

Appeal from judgment of the General Term of the
Supreme Court of the fourth judicial department affirming a
judgment in favor of plaintiff, entered upon a decision of the
court at Special Term. (Reported below, 5 Lans., 372.)

The action was brought to foreclose a lien upon a canal
boat for repairs. John Minney, the owner, and the appel-
lants, mortgagees of the boat, were made defendants. The
mortgagees alone defended. The court found the following
facts: That the plaintiffs were, during the year 1870, copart-
ners, in the city of Oswego, engaged in the business of build-
ing and repairing canal boats, and that they kept a drydock
for that purpose; that, during the fall of 1870, John Minney,
being the ostensible owner and master of the canal boat

"Two Brothers," caused her to be repaired at plaintiffs' dock; that plaintiffs repaired her by necessary repairs, to the amount of $1,084.48; that Minney neglected and refused to pay for such repairs, and the plaintiffs retained the boat in their possession, claiming a lien thereon for the amount of their repairs; that prior to the making such repairs, Minney had run the boat in the canals of this State as master and owner, and while engaged in running her she was foundered and sunk, and required repairs to put her in condition for navigation; that, during the time of the making of such repairs, the defendant Delahunt had knowledge thereof, and did not object nor protest against the making of the repairs; that said defendants also had knowledge that the said Minney had purchased the said boat, and was running her as master and owner; that the said defendants held a mortgage on said boat, upon which $600 was unpaid, and which was a valid lien thereon, and that the same had been forfeited a long time before the making of said repairs; that said defendants had neglected to take the boat into their possession, and only claimed a lien thereon to the extent of the unpaid amount due on the mortgage; that said Minney purchased the said boat subject to the aforesaid mortgage, and run the same as owner and master until the making of said repairs.

And he found and decided, as matters of law, that plaintiffs' lien for the repairs was superior to the lien of the mortgage of the defendant Delahunt, and that they were entitled to a judgment of foreclosure of said lien, in pursuance of chapter 738 of the Laws of 1869, and he ordered judgment accordingly, providing that plaintiffs' lien should be first paid out of the proceeds of the sale of the boat. Defendants excepted to the conclusions of law.

*Wm. Sanders* for the appellants. Minney had no power to pledge or create a lien on the boat beyond his interest in her. (3 Kent's Com., 133, 171; *Spaights* v. *Hawley*, 39 N. Y., 441; *Bissell* v. *Pearce*, 28 id., 252; *King* v. *Franklin*, 2 Hall, 1.) The common law and statutes in relation to ships and vessels

apply only to those in tide-waters or ocean-bound vessels. (5 Hill, 546; 17 J. R., 53; *Hicks* v. *Williams,* 17 Barb., 527; 5 Abb., 461; 8 Bosw., 171.) Defendants were not estopped by any acts or omissions on their part. (*Brown* v. *Brown,* 30 N. Y., 519–526; *Jewett* v. *Miller,* 10 id., 402; *Wilcox* v. *Howell,* 44 Barb., 396; *Young* v. *Bushnell,* 8 Bosw., 1; *Catlen* v. *Grote,* 4 E. D. S., 296; *Merrill* v. *Tyler,* Seld., Notes, Nos. 2, 47.)

*C. T. Richardson* for the respondents. Plaintiffs' lien was of the same force and nature as an innkeeper's lien at common law. (*Robinson* v. *Walter,* Popham, 127; *Grinnell* v. *Cook,* 3 Hill, 490.) Plaintiffs' lien was prior to the lien of the mortgage. (*Williams* v. *Allsop,* 10 C. B. [N. S.], 416; *Weaver* v. *Owens,* 1 Wal. Jr., 368.)

Earl, C. There was no motion at the trial for a nonsuit, or a dismissal of the complaint, and there was no request made by defendants for any further or different findings of fact. The only exception was to the finding of law by the judge, that plaintiffs' lien for repairs was superior to that of defendants' mortgage, and the only question for our consideration is, whether, upon the facts found, this finding of law was correct.

It is not disputed that the plaintiffs had a lien upon the boat for the repairs, as against Minney, the owner, while they retained her in their possession. All mechanics have such a lien while they retain in their possession the articles upon which they have done work. But the claim of the appellants is, that the lien in this case is subordinate to their mortgage.

It must be taken as true that the owner was running this boat with the knowledge and consent of the mortgagees, and that the repairs were necessary to repair the damage which the boat had received, and to put her in condition for use. Under such circumstances I am of opinion that plaintiffs' lien has priority over defendants' mortgage. The mortgagees having allowed the owner to continue in the apparent ownership of the boat, making her a source of profit, and a means of earn-

ing wherewithal to pay off the mortgage debt, the relation
so created by implication entitles the owner to do all that may
be necessary to keep her in efficient state for that purpose.
The boat having been damaged, and rendered unfit for use,
the owner did that which was obviously for the advantage of
all parties interested; he put her into the hands of the plain-
tiffs to be repaired, and according to all ordinary usage they
ought to have a right of lien on the boat, so that those who
are interested in her, and who will be benefited by the repairs,
should not be allowed to take her discharged of the lien.
Looking to the rights and interests of the parties, generally, it
cannot be doubted that it is much to the advantage of the
mortgagee in such case that the mortgagor or owner should
be held to have power to confer a right of lien on the boat,
for repairs necessary to keep her fit for navigation.   Such is
substantially the reasoning of ERLE, C. J., in *Williams . v.
Allsup* (10 C. B. [N. S.], 417).   I am unable to distinguish
that case from this, and the reasoning of the learned judges
who wrote opinions therein is quite satisfactory.   I can per-
ceive no distinction between the two cases, founded upon the
facts that in that case the vessel was a steamboat, navigating
the ocean or navigable waters connected therewith, while in
this case the vessel was a canal boat.   In each case the ship-
wright had possession of the vessel as security for repairs,
made at the request of the mortgagor, or one standing in his
place as owner, and the same principles that would give them
a superior lien in the one case, would in the other.

It is claimed, on the part of the appellants, that the statute
of 1862 (chap. 482), in reference to the collection of demands
against ships and vessels, furnishes the only remedy a claim-
ant is entitled to in such a case as this.   This is a mistake.
That statute was intended, mainly, to give a remedy where
the claimant has no possession of the vessel, and hence has
not a common-law lien.   In case he has possession, the remedy
given by that statute is cumulative.   When a shipwright has
possession he can foreclose his lien, as any other mechanic can
who has the possession of the articles upon which he has

bestowed labor, and the statute of 1869 (chap. 738) also furnishes a remedy.

Chapter 412 of the Laws of 1864 does not give appellants' mortgage priority over plaintiffs' lien, notwithstanding the provision therein that "all claims and liens by chattel mortgage, which shall be filed as herein provided, shall, from the time of such filing, have preference and priority over all other claims and liens." This lien is to be treated as if the repairs had been ordered by the mortgagees themselves. The lien is, in fact, upheld upon the theory that they were made upon the implied consent and authority of the mortgagees, and they cannot, therefore, claim a priority for their lien.

The case of *Bissell* v. *Pearce* (28 N. Y., 252) is invoked as an authority against the priority of plaintiffs' lien. In that case, on the 2d of December, 1858, the owner of four horses delivered them to the defendant, a farmer, to be kept and fed during the winter. Afterward, on the 13th day of January, 1859, the owner mortgaged the horses to the plaintiff. In April the owner applied to the defendant for the horses, and, not being prepared to pay defendant for their keeping, he took three of them, and left one with the defendant, under an agreement that he should retain that one as security for keeping all the horses. In June, following, plaintiff demanded the horse of the defendant, and he refused to deliver it until he should pay his whole bill for keeping all the horses. The plaintiff then brought an action for the conversion of the horse, and he was allowed to recover. The only lien the defendant had was by virtue of the special pledge, made in April. The law gave him no lien for keeping the horses, and it was held that the lien created by the special agreement was subordinate to the mortgage. There were no facts proved from which an implied authority of the mortgagor to create the lien could be inferred. The element of necessity was absent. The mortgagee left the horses in the possession of the mortgagor, and thus gave him the right to use them in the ordinary way. For aught that appears, the horses could have been used so as to pay for their keeping, and the mort-

gagee had the right to suppose that they would be thus used, and be kept free of expense to him. If the facts had been shown that the horses could have been kept in no other way, and that, to preserve their lives, it had been necessary to deliver them to the defendant for keeping, a different question would have been presented. In fact, there was no necessity to create any lien, as the owner, in April, when he made the pledge of the one horse, had the right to take all the horses, as the defendant, a farmer, had no lien whatever for their keeping, and, therefore, no right to retain them. Hence, the lien created could no more have priority over the prior mortgage than any other pledge, or a mortgage made at the same time by the mortgagor could have had. I am, therefore, of opinion that that case is not a controlling authority in this.

The judgment must be affirmed, with costs.

All concur.

Judgment affirmed.