AARON BROMAN, Respondent, *v.* STEPHEN E. YOUNG AND Others, Appellants.

*Leasehold interest in oil lands — the interest of a mortgagee thereof before default is not the subject of a lien under chapter 440 of 1880 — the nature of his interest was not changed by chapter 372 of 1883.*

The defendants Wiser, who were the owners of a leasehold interest in lands upon which were oil wells, and of the machinery and appliances used in operating the same, executed a mortgage thereon on February 4, 1884, to the other defendants to secure them for indorsements made for the mortgagors. After the execution and recording of the mortgage the plaintiff, at the request of the mortgagors, performed work upon the premises in drilling wells, etc. At that time the mortgagors were not in default to the mortgagees. June 24, 1884, the mortgagees purchased the entire estate of the mortgagors in the

premises. July 25, 1884, the plaintiff filed a notice of lien against the property for his claim for services, under chapter 440 of 1880; which provides that any person who shall perform any labor in drilling any oil well, *with the consent of the owner,* whether owner in fee or of a less estate, or whether lessee for a term of years, or vendee in possession under a contract, or any right, title or interest in real estate against which an execution at law may be issued, shall, upon filing the prescribed notice, have a lien upon such premises and property.

*Held,* that as the mortgagors were in possession of the property and not in default at the time the work was ordered and performed, they could not be considered as acting for or in behalf of the mortgagees, and that no consent upon the part of the mortgagees would be presumed; that to establish a lien, as against them, their express consent to the performance of the work must be proved.

That the mortgagees, prior to any default on the part of the mortgagors, were not the owners of any interest or estate specified in the act of 1880 which could be made the subject of a lien.

That the common-law nature of the mortgagees' interest in the property was not changed by the passage of chapter 372 of 1883, providing that all oil wells, and all fixtures connected therewith, situate on lands leased for oil purposes, and oil interests and rights held under and by virtue of any lease or contract, or other right or license to operate or produce petroleum oil, shall be deemed personal property for all purposes except taxation.

APPEAL from an order of the Cattaraugus Special Term appointa receiver *pendente lite* of the leasehold interest of the defendants in certain lands.

*J. R. Jewell,* for the appellants.

*George H. Phelps,* for the respondent.

BRADLEY, J.:

The defendants Frank W. Wiser and Aaron B. Wiser were the owners of the leasehold interest of 116 acres of oil land, situate in Alleghany county, upon which were twenty-one oil wells, and of machinery and appliances used for their operation, for which they were required to render to the owner of the fee three-eighths of the oil produced as royalty. On the 4th day of February, 1884, and afterward, they made to the appellants mortgages on the property to secure the latter for their accommodation indorsements for them. On the 24th of June, 1884, the appellants purchased the entire interest of those defendants in the property, and took title thereto. After the 4th day of February, 1884, the plaintiff, by request of and for the defendants Wiser, performed work upon the premises, drilling wells, etc., for which they became indebted to him in the

sum of $2,716.40. And on the 25th July, 1884, he filed a notice of lien on the property for such claim under the provisions of Laws 1880, chapter 440. And afterwards and in August, 1884, served notice on the appellants, with bill of particulars annexed, for the foreclosure of the lien, pursuant to that statute, by which he notified the parties defendants to the proceeding that if they failed to appear and answer, judgment would be taken for that sum against defendants Wiser, and judgment for foreclosure and enforcement of the lien and sale of the premises against all the defendants. The appellants answered.

The plaintiff moved for the appointment of a receiver of the oil wells property and production of them, and an order was made to that effect from which this appeal is taken. The affidavits used upon the motion tend to show that up to the 24th June, 1884, the appellants had no interest in the property except such as the mortgages gave them; that the work of the plaintiff for which the claim is made, was performed before any default on the part of the mortgagors and while the latter had the possession of the premises and property, and without any request of the appellants, and by their answer and affidavit they state that it was done without their knowledge, and that they had no knowledge or information of the claim until after the notice of lien was filed.

The statute, under which the plaintiff proceeded to create and now seeks to enforce it, provided that any person who shall perform any labor in drilling any oil well, etc., with the consent of the owner, whether owner in fee or of a less estate, or whether lessee for a term of years, or vendee in possession under a contract, or any right, title or interest in real estate against which an execution at law may be issued, shall, on filing with the county clerk of the county in which the property is situated, the notice prescribed by the act, have a lien for the value of such labor upon such premises and property, and that such notice must be filed within sixty days after the completion of such work. Another statute provides that, "all oil wells and all fixtures connected therewith, situate on lands leased for oil purposes, and oil interests and rights held under and by virtue of any lease or contract, or other right or license to operate or produce petroleum oil, shall be deemed personal property for all purposes except taxation, but nothing herein contained shall

affect the laws now in force relating to taxation." (Laws 1883, chap. 372.) The contention of the learned counsel for the plaintiff is: 1. That the appellants were, by virtue of those mortgages, owners of the property; and, 2. That the labor was performed by the plaintiff with their consent, and thus brought within the meaning of the statute, and their interest in the property charged with lien, produced by the filing of the notice on the 25th day of July, 1884.

The mortgages are not set out in the appeal book, nor does it there appear what their provisions were, and it is only by inference that we are advised what is the particular property described in them. It appears that they were recorded in the county clerk's office. They were probably before the Special Term, as in the opinion delivered there it is said that they contained words of sale and transfer by the mortgagors to the mortgagees, and provided that in case the latter deemed the mortgaged property or debt unsafe it should be lawful for them to take possession of the property, and to sell the same at public or private sale, etc. Such sale and such right to take possession, etc., were made and given to secure the mortgagees on account of their indorsements for the mortgagors. Assuming (as claimed by the plaintiff) that the legal title passed for that purpose, the right of the mortgagors was that of redemption, and before default, or until the mortgagees in good faith deemed themselves unsafe, was that of possession, control and management of the property. (*Hall* v. *Sampson*, 35 N. Y., 274; *Hamill* v. *Gillespie*, 48 id., 556; *Hathaway* v. *Brayman*, 42 id., 322.) In such case the nature of the title of the mortgagees is not general, but is that of special property until default. The main question (on such assumption) to be considered is: Was the labor in question performed with the consent of the appellants? They did not employ the plaintiff. They say they had no knowledge that the plaintiff performed the work which is the subject of the claim in question, and there is no pretense that they had possession, or anything to do with the operation of the property at the time the work was done, but their property is sought to be charged by the alleged fact that they, as such mortgagees, were owners, and by their consent, implied from that relation, because upon the proofs presented by the affidavits no express consent is established.

The notice of the claim and affidavit of the plaintiff merely allege

that the labor was performed with the knowledge and consent of the appellants in general terms, and that they came upon the premises when he was at work on the property and had knowledge that he and others were laboring there to put down oil wells and made no objection, which covers the entire charge of consent. It is not claimed that they said anything to him or he to them; and if it may be inferred that the work the plaintiff and others were then performing constituted that on which the claim here is founded, or some part of it; there is difficulty in construing it into an express consent, or into any consent on their part, under the circumstances; and they deny having any knowledge or information that the plaintiff was doing or did any work on the premises, and affirmatively state quite specifically that they had no such knowledge or information and in no manner consented. It is a significant fact that at the time the work was done the mortgagors were not in default; that they then had the exclusive right to the possession of the property, as well as such possession in fact, and the exclusive right to operate, manage and control it and take the proceeds, and that the appellants then had no right to the possession or to interfere with that of their mortgagors. They had not the right to make any objection to the use then made of the property and its operation by them. Nor did the mortgagors then have the possession and operation of the property by the consent or permission of the appellants in any sense. The Wisers having the possession gave the mortgages, reserving to themselves the possession and the right to it until the unexpected event should occur which would afford to their mortgagees the right to enter and take it, which might never arise. The right of such possession in the Wisers was not given by or derived from the appellants, so that the mortgagors were not acting for them, nor was any authority to that effect implied. There was, therefore, no sort of relation between the parties to the mortgage in respect to the conduct, use or operation of the property. It follows that no consent of the mortgagees could be inferred from or through any act of employment by the Wisers. A person cannot be charged with consent to his prejudice, to any act or thing over which he can have no possible control, or about which he cannot legitimately have any concern, at least unless it appears that consent was expressly given.

The appellants had 'no right to object to any act of the mortgagors which did not impair their security, and were not required to consent to anything which improved it. Nor could they be deemed to consent because the latter would be the effect of anything done by or through the action of the mortgagors. It is unnecessary here to determine what rule might be applied in that respect to work done upon the employment of mortgagors of personal property after default in payment of a debt so secured, and we do not now express any opinion on that question. But on such default the mortgagee becomes the absolute owner of the property mortgaged subject only to the right in equity, of redemption under certain circumstances. (*Marsden* v. *Cornell*, 62 N. Y., 215.) Thereafter the mortgagor may be deemed to hold possession by consent or permission of the mortgagee, from which authority or consent may be implied for certain purposes, to do what may be necessary for the protection of the property. Such was the case of *Scott* v. *Delahunt* (65 N. Y., 128). There the purchaser from the mortgagor of a canal boat was permitted to retain the possession of and run the boat, after default in payment of the mortgage, and it was held that the party who repaired the boat and held possession of it had a lien for the value of the services and materials performed and furnished in making such repairs superior to the mortgage. And that was put upon the ground that by reason of the default the mortgagee was entitled to the possession, and the possession and use of the boat by the party who caused the repairs to be made were by the permission of the mortgagee, and therefore the consent of the latter was implied to have done what was necessary for the preservation and protection of the property. That was a common-law lien and consent was required to support it — as does the lien provided by the statute in question. And the latter is no broader in its operation and effect than that of the common law. And in the case cited it cannot be assumed that the court would have held that any consent of the mortgagee would have been inferred in support of the lien as against him, if his right of possession had not existed at the time the repairs were made of the boat.

The learned justice at Special Term said, substantially, that if the appellants knew that improvements had been made on the property

by somebody, " it was proper that they should assume, when they took possession of the property, that it might be charged with liens to the extent of the improvements made; the fact that they might be ignorant of the persons making them would seem to be immaterial." And he adds : "It can hardly be supposed that they (appella ats), incurring such large liabilities on the strength of the property should not keep themselves advised of the facts which increased or diminished its value." This cannot answer the purpose of the statute requiring consent of persons who had only a special property as security merely, with neither right to the possession of or to control the property or its management, and could not assume that they ever would or could have any such right. In such case it would seem that nothing short of an express consent, as distinguished from an implied one, will suffice under the statute. (*Craig* v. *Swinerton*, 8 Hun, 144, 147.) This the affidavits fail to show in this case, but tend to the contrary.

In *Otis* v. *Dodd* (90 N. Y., 336), the defendant was the owner of the premises which he leased to the party who employed the plaintiff to supply work and materials for the erection of structures on them. And by the terms of the lease it was provided that the buildings should be erected by the lessee and become part of the freehold, and should be kept in repair. The lessor went on the premises, advised about the location, and gave some directions as to the manner of construction. The court held that this was consent.

And in *Nellis* v. *Bellinger* (6 Hun, 560), the defendant was owner, and was present and assisted some in the work.

Those were cases of unqualified ownership by the person charged, and their consent was well established, and differ very materially in principle from the case at bar.

But there is another view of this case which may dispose of it upon the question of ownership. The statute defines the interests which may be charged by lien, and those only can be. The right and remedy are purely statutory. The owner described is one having a title or interest in fee or of a less estate, lessse for a term of years, or vendee in possession under a contract existing at the time of filing the notice, or any right, title or interest in real estate against which execution may go. This seems to embrace only real estate and chattels real. The only interest subject to lien in this

case, and to which the term owner, chargeable by consent, can be applied, was the estate for years. That was the estate of the lessee. It is that which may under the act of 1880 become charged with lien as against the owner who consents to the work. The question arises whether a mortgagee of that interest is owner of it. It is at common law a chattel interest. The term is given by the lease and exists in it, so that a transfer of the lease assigns the term. The mortgage of the estate or interest operates as a transfer of the lease as security only. The mortgagee of the term out of possession is not treated as the assignee or owner of the term. He is not liable as such on the covenants which go to and against the assignee, but the mortgage merely charges the term as security for the payment of the debt secured by it. (*Astor* v. *Hoyt*, 5 Wend. 603 ; S. C., *sub. nom. ; Astor* v. *Miller*, 2 Paige, 68.) This being so, the right of the mortgagee out of possession is a mere chose in action. He by foreclosure of his mortgage becomes assignee of the lease, charged with the covenants to pay the rent. (*People* v. *Dudley*, 58 N. Y., 323, 331.) The rule in respect to the legal title passing to a mortgagee of personal property, does not seem to be applicable to a mortgage of a lease-hold estate. (*Booth* v. *Kehoe*, 71 N. Y., 341, 343.)

By the statute an estate for years is treated as an interest in land, upon which a judgment becomes a lien and may be sold on execution. (1 R. S., 722, § 5 ; 2 R. S., 359, § 3 ; *Averill* v. *Taylor*, 8 N. Y., 52 ; *Burr* v. *Stenton*, 43 id., 465 ; *Despard* v. *Churchill*, 53 id., 199.) And leases for a term exceeding three years come within the term real estate, as used in the statutes of this State. (1 R. S., 762, § 36.) But its intrinsic quality probably remains the same as at common law, and as such is a chattel interest, and its nature that of a chose in action. (*Burr* v. *Stenton*, 52 Barb., 389 ; 4 Kent Com., 85.)

Treating the appellants as mortgagees of an interest in land, or as assignees of a lease for years as security, they cannot be deemed owners of the term or of the lease. (*Trimm* v. *Marsh*, 54 N. Y., 599, 604.) And it is difficult to see how the act of 1883 (chap. 372) produces any change in their relation to the leasehold interest. That statute declares that "rights held under and by virtue of any lease or contract or other right or license to operate for or produce petroleum oil,

shall be deemed personal property." That does not provide or have the effect to vest the legal title to the rights held under a lease for years in the mortgagee, nor does that statute enable a mortgagee or assignee, as security, of the lease, to take title to it. The law, so far as the relation of the mortgagee to the leasehold interest is concerned, remains the same as before the act of 1883. That statute evidently was passed to protect the lessee in respect to the structures he should put on leased lands for the purposes of the business, as well as to enable his creditors to reach those structures, etc. Beyond that no purpose would seem to have been necessary. The right to lien under the act of 1880, as applied to this case, has relation to the ownership of the leasehold interest in the premises and that only. (Laws 1880, chap. 440, §§ 1, 2, 9.)

The appellants at the time the work in question was done do not seem to have been owners of any estate in this land, nor were they lessees for a term of years; and therefore did not come within the term owner, as designated in the statute, of an interest chargeable with lien as against them. We have assumed that the mortgages were taken, and the purchase of the property made by the appellants in good faith, without any fraud or collusion with the defendants Wiser, because nothing appears in the papers charging anything to the contrary. When they purchased no notice of lien had been filed, and when that was filed so far as appears here the Wisers had no interest in the property.

The conclusion follows that the order should be reversed.

HAIGHT, J., concurred; BARKER, J., not voting.

Order reversed, with ten dollars costs and disbursements.