ERASTUS CORNING, RESPONDENT, v. LEURENDUS B. ASHLEY, APPELLANT, IMPLEADED WITH OTHERS.

*Chattel mortgage on animals — lien for their keep under a contract with the mortgagor — enforced as against the mortgagees by a lienor, himself one of the mortgagees.*

An owner of a horse, having given a chattel mortgage thereon to secure a debt, subsequently placed the horse with the plaintiff in this action, by whom he was to be cared for and pastured.

In this action, brought to enforce a lien for such care of the horse, under chapter 498 of the Laws of 1872, as amended by chapter 145 of the Laws of 1880:

*Held,* that the plaintiff was entitled to a judgment establishing his lien upon the horse and directing its payment out of the proceeds of the sale of the horse.

That a claim that after default in the mortgage the mortgagor was not "the owner" of the horse any longer was not well taken, as the word "owner," as used in the statute relating to such lien, is used in contradistinction with an entire stranger, a person who has no right or authority over the chattel.

*Bissell* v. *Pearce* (28 N. Y., 252) distinguished; *Scott* v. *Delahunt* (65 id., 128) followed.

That the fact that the plaintiff was one of several mortgagees to whom the chattel mortgage was given, did not prevent his acquiring a lien for the care of the horse, especially where, as in this case, it appeared that, under the terms of the mortgage, the plaintiff was not entitled to receive anything until other and prior claims had been first paid.

APPEAL by the defendant Ashley from a judgment rendered at a circuit and Special Term of the Supreme Court, held in the county of Albany in May, 1888, in favor of the plaintiff after a trial before the court without a jury.

The action was brought to establish a lien upon certain horses described in the complaint, for their care, keep and pasturage since the service of certain notices set forth in the complaint, which lien amounted, at the date of the trial, to the sum of $2,760. The judgment established the lien and held that it was, prior to the lien of the defendant Ashley, under a chattel mortgage executed by the owner to Ashley, the plaintiff and another party.

*John S. Morgan,* for the appellant.

*Matthew Hale,* for the respondent.

LEARNED, P. J.:

On the 11th day of September, 1884, Huntington, one of defendants, executed a mortgage on the horses in question and other horses owned by him, to Ashley, Reynolds and Freeman, other of the defendants, and to Corning, the plaintiff. This mortgage was first to secure Ashley in one year $3,120.35, and after paying Ashley, then to pay in one year whatever the mortgagor might owe the others above-named. Only about $122 has been paid Ashley. On the 1st of November, 1885, Huntington sent some of the horses to Corning to be cared for, kept and pastured, and on the 17th of April, 1886, another. Corning had kept, cared for and pastured them down to the time of trial, and they were then in his possession. On the 24th of May, 1886, Corning served on all the defendants (except Freeman) a notice that he claimed a lien for the keeping of the horses, in due form; and on the 15th day of March, 1887, another notice of a similar character, on all the defendants. The horses had been in Huntington's possession until he sent them to Corning.

This action was brought to enforce Corning's lien, under chapter 498, Laws of 1872, amended by chapter 145, Laws of 1880. The court found the value of the keeping since the service of the notices and gave judgment therefor, and that the horses be sold to satisfy the lien. The defendant Ashley appeals, insisting that, as against him, the mortgagee, the plaintiff has no lien. The defendant Ashley insists, first, that after default in the mortgage, the defendant Huntington was not "the owner" of the horses. The word "owner," in this statute, is used in contrast

with an entire stranger, a person who has no right or authority over the horses, a thief, for instance, or a mere hirer of the animals. The mortgagor in possession, even after default, is not such a person. It is true that the decisions as to his rights are somewhat inconsistent with themselves. As where it is said that on default, the mortgagee's title becomes absolute; yet the mortgagor has an equity of redemption and is not divested of all interest. (*Charter* v. *Stevens*, 3 Den., 33.)

But we need not in this case discuss the exact rights of such mortgagor. If the mortgagee does not take possession, he evidently leaves the mortgagor to take care of and use the property in a rightful manner. So that if the mortgagee insists that on default he has become the owner, he evidently continues the mortgagor (remaining in possession) as still having authority to do all things needed for the property. It is not meant by this that the mortgagor becomes an agent of the mortgagee to bind him. Only that under this statute he is the owner, or a person acting for the owner, in distinction from a mere stranger. (*Scott* v. *Delahunt*, cited below.)

The next question, then, is as to the effect of the lien given by statute as against the mortgage of the defendant Ashley. To create the lien the statute requires previous notice of the amount of the charges and the intention to detain the animals until the charges are paid, to be given to the owner. Such notice was served on Ashley as well as on the others, and the amount recovered is for charges since such service. In *Bissell* v. *Pearce* (28 N. Y., 252) it was held that a mortgagor could not, by his own agreement, create a lien for the keeping of horses superior to the rights of the mortgage. But this present case rests on a different ground. The statute creates the lien. That statute was in force when the mortgagee took his mortgage, he knew, or was chargeable with knowledge that the statute then gave to the agistor this lien, which would attach to any horses lawfully placed with him. It was intended to protect every agistor by giving him a lien. And Ashley could not by his mortgage deprive an agistor of the benefit of the statute. In a certain sense, it may be said that the provisions of the statute entered into the contract of mortgage. In *Scott* v. *Delahunt* (65 N. Y., 128) it was held that the owner of a mortgaged canal boat, after the mortgage had became pay-

able, might have necessary repairs made, and that such repairs would be a lien prior to the mortgage. The law gave the lien as against the owner. The mortgagee had allowed the mortgagor to continue in possession and apparent ownership, therefore the mortgagor might have repairs made. And the lien given by the common law to the workman attached as against the mortgagee. The court distinguished the case from that of *Bissell* v. *Pearce* in this respect, that in the one the lien was created merely by the agreement of the mortgagor; in the other by the law. That distinction brings the present case exactly within the principle of *Scott* v. *Delahunt*. The lien is created by law, a law existing at the time of executing the mortgage, and if the mortgagee desires to prevent the mortgagor from doing anything which might give rise to the lien, he should take possession of the property. The defendant urges that a man cannot convey what he does not own. This remark would be applicable if the mortgagor had simply by his own agreement pledged the property, as in *Bissell* v. *Pearce*. But it does not apply when the law gives the lien, a law to which the rights of the mortgagee are subject.

In *Scott* v. *Delahunt* it is stated that, during the time of making the repairs, the mortgagee had knowledge thereof and did not object. The same circumstance exist here, Ashley knew that the plaintiff had the horses for keeping and knew of plaintiff's claim to have a lien, and did not object.

The defendant Ashley further insists that he and the plaintiff and the others became tenants in common after the mortgage was payable, and hence plaintiff can have no lien. It is enough to say that Ashley, under the terms of the mortgage, had the right to be paid first and before the others; until he was paid the plaintiff and the others had practically only a second mortgage. This did not deprive the plaintiff of his rights as an agistor under the statute.

The judgment should be affirmed, with costs.

LANDON and INGALLS, JJ., concurred.

Judgment affirmed, with costs.