(Geauga Court of Common Pleas.)

### WILLIAM J. GRAHAM v. WILLIE H. WINCHELL et al.

*Chattel mortgage on horse, executed before Act of April 10, 1894, prior to lien for keeping same—Amended act retroactive.*

1. Where a mortgage on an animal in the usual form, is duly executed and delivered, the legal title is thereby conveyed to the mortgagee ; when it is duly registered, and while it remains a valid registered mortgage, the interest of the mortgagee is that of a general owner of the animal, as against any and every interest or lien acquired after the registry of the mortgage. Hamilton, was not therefore the owner of the mare at the time he made the contract with the plaintiff for her care and keeping within the meaning of original sec. 3212.
2. Under such a mortgage, duly registered, after condition broken, the mortgagee can legally take the animal, wherever found, into his possession under the mortgage as against any and every claim or interest acquired in the animal after the registry of the mortgage, without the consent of the mortgagee express or implied, when there is a provision therein authorizing it, as there is in this case.
3. Under such a mortgage, prior to April 10, 1894, there could be no lien superior to that of the mortgagee, created, by furnishing necessary care and keeping to the mortgaged animal under a contract with the mortgagor, while he was in possession of it, without the consent of the mortgagee express or implied.
4. In a mortgage of animals made and registered prior to April 10, 1894, where the mortgagor retains the possession of the animal mortgaged under the provisions of the mortgage in the absence of any provision to the contrary ; it may be presumed, until the contrary is shown, that the animal was to be furnished all necessary care and keeping, without impairing the mortgage security therefor.
5. All the transactions having any bearing upon the questions to be determined upon this demurrer, ante-date the passage of the act of April 10, 1894, amending sec. 3212. The language of the amended act, shows the act was not designed to have a retrospective operation ; but that its operation was to be prospective only ; to apply it to this case, would give it a construction, unauthorized by its language--a retroactive and unconstitutional application and effect. Article 2, Section 28 Constitution. We therefore hold the amended act of April 10, 1894, is not applicable in this case.

(Decided February 14, 1896.)

---

HOWLAND, J.

The plaintiff's cause of action is stated in the petition substantially as follows: One Otis Hamilton, on or about the 6th day of December, 1893, was the owner, and then in possession of a bay mare; that he then entered into a contract with the plaintiff, to care for and keep said mare,

until the next December; that he took her into his possession and entered upon the performance of said contract, and continued under said contract to keep and care for said mare until the 15th day of November, 1894, when the defendants wrongfully and without the consent of the plaintiff, unlawfully entered his premises and wrongfully took said mare out of his possession and converted her to their own use; that said mare was then worth seventy-five dollars; that the plaintiff then had a lien upon her for care and keeping under said contract and section 3212 of the Revised Statutes, which he was wrongfully deprived of, by said wrongfully taking and conversion, and thereby damaged in the sum of seventy-five dollars.

The defendants have filed their answer, and for a second defense therein, it is averred, in substance, that on the 29th day of March, 1893, said Otis Hamilton then being the owner and in possession of said mare, then executed and delivered to the defendant, Winchell, for a valuable consideration, his promissory note for the sum of forty-five dollars, to become due in eight months from date. That to secure said debt said Hamilton then made and delivered to the defendant, Winchell, a chattel mortgage on said mare, a copy of said mortgage with all indorsements and affidavits thereon, is filed with, and attached to, this answer as an exhibit, and is expressly made a part of the second defense. No question has been made as to the propriety of the pleading, in making said mortgage, indorsement and affidavits a part of the answer. We are, therefore, permitted to look into this mortgage, its indorsements and affidavits in passing upon this demurrer. The averrments in relation to the mortgage are sufficient to show that all the provisions of the statute to make chattel mortgages valid in law, have been complied with; that the mortgage has been kept alive, and is now and was at the time the mare was taken by the defendant a valid subsisting chattel mortgage. It is also averred that a breach of the condition of said mortgage occurred on or about the 29th day of November, 1893, and almost one year before said mare was taken from the plaintiff; that no payments have been made thereon.

The following provisions in substance, among others, are found in the mortgage, to wit:—"I, Otis Hamilton, for the consideration of forty-five dollars, received to my full satisfaction of Willie H. Winchell, have sold and set over to him, his heirs and assigns forever, one bay mare, to have and to hold to him and his heirs and assigns forever." It is also provided therein that, in the event Hamilton does not misuse or secrete or commit any waste upon the property conveyed, that said mare may remain in his possession until default, but if default is made in the payment of said note, or in the performance of any of the covenants mentioned therein, at the time for such payment or performance, that said Winchell, his heirs or assigns, are authorized at any time thereafter, with aid and assistance, to enter the dwelling house or other premises of said Hamilton or any other place where said mare may be found, and take her away and sell her at public auction or private sale, and out of the proceeds pay said indebtedness and expenses of sale. It is admitted in said second defense that the defendant did take said mare out of the possession of the plaintiff, on or about the 15th of November, 1894, but it is averred therein, they took her under the provisions of said mortgage which authorized them to do so, and that taking, is the taking and conversion complained of in the petition.

To that defense the plaintiff has filed a general demurrer. In support of the demurrer the plaintiff claims he has a lien for the keep and care of said mare, under said contract, which is prior to the mortgage lien of the defendant, at common law, and under section 3212, for the reason, that the care and keeping so furnished were necessary to preserve the life

of the mare, and thereby prevent the defendant's mortgage security from being lost.

Section 3212 reads as follows: "A person who feeds, or furnishes food and care, or either, for any horse, foal, filly, gelding, cattle, sheep, swine, mule or ass by virtue of any contract or agreement with the owner thereof, express or implied, shall have a lien therefor to secure the payment of the same upon such animal." This section of the statute was in force at the time said mortgage was made, and said contract for care and keep was entered into.

All of the averments of said second defense are admitted as being true by the demurrer. It is therefore in effect admitted by the demurrer that said mortgage was a valid and subsisting lien. That it was made on the 29th day of March, 1893, and more than eight months before the plaintiff made said contract with the mortgagor, Hamilton, for the care and keep of said mare; that said contract was made, and said mare taken from the plaintiff after the condition of the mortgage had been broken and after the same had become absolute.

At common law, Otis Hamilton, as the mortgagor in possession before condition broken, had no power to create by contract a lien upon the mare, which should have priority over the defendant's valid mortgage, made and recorded before the contract for care was made, without the consent of Winchell, the mortgagee. It is admitted that Hamilton, the mortgagor, by the terms of the agreement under which said mortgage was executed, was to retain the possession of said mare until condition broken. In the absence of any provision to the contrary, it is to be presumed that he was to provide the necessary care and keeping for said mare to preserve the mortgage security unimpaired, while she remained in his possession under that agreement.

Jones on Chattel Mortgages, Sec. 472. Bissell v. Pierce, 28 N. Y. 252; Sargent v. Meher, 55 N. Y. 287. Smith v. Warmon, 19 Ohio St. 145.

If Hamilton could not by contract create such lien while in possession before condition broken, then it follows that he could not create such a lien after condition broken and the defendant Winchell's right to take said mare into his possesion had vested in him. Again, at common law and also under the statutes of the state, Hamilton, by executing and delivering said mortgage, conveyed to the defendant, Winchell, the title to said mare, and Winchell thereby became the owner of her, subject only to the right of Hamilton to be reinvested with the title upon payment of the mortgage indebtedness.

Vol. 2 Ohio Nisi Prius Reports 169, in re-assignment of Frederick Brammer. 26 Ohio St. 659 Robinson v. Fitch. Jones on Chattel mortgages, Sec. 699. 9 Wend. 39 Barber 390.

Therefore Otis Hamilton, having by said mortgage conveyed the title to said mare to the defendant, was not the owner of said mare within the meaning of section 3212 when he entered into said contract for her care and keep with the plaintiff, and the plaintiff acquired no lien upon her by furnishing said care and keep under said section of the statute or at common law. Section 3212 was amended April 10, 1894, and the amended act is found on page 133 of the laws of 1894. The plaintiff claims a lien for said care and keep under the provisions of said amended act, which reads as follows: "A person who feeds, or furnishes food and care, or either, for any horse, mare, foal, filly, gelding, cattle, sheep, swine, mule or ass, by virtue of any contract or agreement with the owner, or person having lawful possession thereof, express or implied, will have a lien therefor, to secure the payment of the same upon such animal."

A person furnishing care and keeping, under a contract with a person

having lawful possession of an animal, will have a lien therefore under the amended act. If the contract set out in the petition had been made after the passage of the amended section, the plaintiff's claim to a lien would then have been placed on higher legal grounds, but this contract in fact, was made about four months before the passage of the amended act, and more than eight months after the making and delivery of said mortgage, and after the title to said horse had vested in the defendant Winchell. If this amended act can be applied to the contract set out in the petition, and a lien created thereby and made prior to the defendant's mortgage lien, and if the value of the horse does not exceed $75.00, then the defendant's mortgage lien would be annihilated by said act, which was not passed until almost one year after Winchell had acquired the title to said mare by said mortgage conveyance. That would be giving a retrospective, or retroactive application to the amended act, which is unauthorized by the language of the act and cannot be done. 37 Ohio St. 74—opin. 48 Ohio St. 106—opin. To place such a construction upon the amended act would be giving it an application and effect which is prohibited by the constitution of the state. Section 28, Article 2, of the constitution. The legislature of the state has no power to, and could not give this act that effect though it contained, which it does not, language which, in terms required such a construction and application.

A retroactive law inhibited by section 28, article 2, of the constitution, may be defined, as being a law, which by its terms takes away, or impairs vested rights, acquired under existing laws; or creates a new obligation; or imposes a new duty; or attaches a new disability, in respect to transactions or considerations already passed. Bradon et al. v. Holden, as Admr., 17 Ohio St. 207—opin. 210.

The amended act was not designed to have, and cannot be given by construction, retrospective application. It cannot apply to, or in any way affect the chattel mortgage set up in the second defense.

We find and hold that the second defense contains a sufficient statement of facts to constitute a defense. The demurrer is therefore overruled.

I. N. Hathaway, for plaintiff.

N. H. Bostwick, for defendants.