Mid-States Freight Lines, Inc., et al., Appellants, v. Spencer E. Bates et al., Constituting the State Tax Commission, Respondents.

Third Department, March 10, 1952.

*Herbert Burstein, Sidney E. Cohn, Daniel W. Meyers, Sol Rubenstein, Louis B. Boudin, Hyman N. Glickstein* and *Harris J. Klein* for appellants.

*Nathaniel L. Goldstein, Attorney-General (Wendell P. Brown, Solicitor-General, John C. Crary, Jr.,* and *Robert W. Bush* of counsel), for respondents.

BERGAN, J. The action is for a declaratory judgment to hold invalid on constitutional grounds the weight-distance tax on trucks provided by article 21 of the Tax Law, added by chapter 74 of the Laws of 1951. Injunctive relief is sought to restrain the enforcement of the tax.

The court at Special Term upheld the validity of the law; granted judgment for the defendants in consonance with its views on the constitutional questions raised; and the case is here on the plaintiffs' appeal from the judgment and the order denying injunctive relief.

The statute under attack imposes, in terms, a " highway use tax " on the operation of vehicles on the roads of the State (Tax Law, § 503), and affects vehicles having a gross weight of over 18,000 pounds. It exempts omnibuses and a group of vehicles in a class of which snowplows and truck cranes are typical (§ 501, subd. 2).

Gross weight is defined as the actual weight of the vehicle plus " the maximum load " which the vehicle can carry (§ 501, subd. 4). It is, therefore, based on the weight of the truck itself and of its capacity, whether loaded to that extent or not. The tax is fixed on a graduated scale beginning at six mills for the lowest group, increasing up to the legal maximum weight, multiplied by the number of miles traveled (§ 503).

There are other exemptions from the tax besides the omnibus and the snowplow type of vehicles and the exemptions in their totality bear heavily the weight of the plaintiffs' attack on the constitutionality of the statute. The tax is not imposed where the vehicle is " used exclusively within " a " zone established

by the public service commission '' or '' used exclusively within '' a city or village (§ 503, subd. 2). Vehicles exclusively used to deliver mail, and those owned by general and local government are exempt.

The exemption, finally, is extended to vehicles both '' owned '' and '' operated '' by a farmer and used exclusively by him to transport '' his own '' agricultural products from, or his needed supplies to, his farm. It extends also to the outward movement of farm products '' by a farmer '' from a farm '' contiguous to his own.'' (§ 504.)

The attack on the constitutionality of the statute moves on a very broad front. It is said that the statute throws an undue burden on interstate commerce and is thus offensive to the United States Constitution; that it is unreasonably discriminatory in a sense offensive to both the United States and New York Constitutions in the guarantees they afford respectively of equal protection of the laws; that as a statute it is an improper delegation of legislative power and an incorporation by reference of another law in such a manner as to be invalid under the New York Constitution. Some, but not all, of the plaintiffs are engaged wholly or partly in interstate commerce and would be affected by the first ground of invalidity if it is found to exist.

Appellants strongly argue that the facts should have been tried at Special Term and that the judgment on the pleadings which the court granted on defendants' motion swept through unresolved factual issues which could have a controlling influence on the decision and which warranted a trial, and we address ourselves first of all to this contention.

We must presume to be true every fact pleaded by the parties against whom the judgment has run. We need not, of course, accept the legal conclusions pleaded; nor need we presume that the complaint pleads facts. A triable issue does not exist merely because a forceful argument is made that the pleading should be construed that way.

The complaint alleges the business of the respective plaintiffs. It pleads a description of the commercial zones of the State as they have been established by the Public Service Commission. These are factual allegations.

It pleads the provisions of the statute which it alleges is '' unconstitutional and invalid '' on enumerated grounds, all of which are conclusions of law. An example is the allegation that the statute '' creates unreasonable and arbitrary classifications.''

It then pleads that the statute "discriminates against" interstate commerce in respects which are all descriptive of the statute itself. It then repleads, in effect, what it pleaded before, that the statute, as applied to the plaintiffs, is "unreasonable", and "arbitrary", and "capricious", and "discriminatory" and "constitutes a burden upon and an attempt to regulate interstate commerce".

All these things present problems of law which the Special Term was required to resolve on the face of the pleadings and not issues of fact. No facts are pleaded except the nature of the business operations in which plaintiffs are engaged and the territorial descriptions of the zones established by the Public Service Commission. The rest of the pleading is a description of a statute on its face, accompanied by a conclusion that it is constitutionally invalid.

We turn from an examination of what plaintiffs have actually pleaded to their own construction of their pleading which we assume to be the optimum of what they think they would establish as facts under it. Their main brief asserts that they will prove that "the exemptions" set up in the law "are so far-reaching" and "affect so many vehicles" as to throw "virtually the entire burden" of the tax on interstate commerce. It will also be proved that the exemptions are so "broad" and "conclusive" that they "cannot possibly be predicated" on a fiscal policy and "must be" the "expression of" social or economic policies of the State.

It will be assumed in consonance with the plaintiffs' overall contentions, whether it be a provable fact or not, that when there has been withdrawn from the operation of the statute the trucks of under 18,000 pounds gross weight, the local and zonal traffic, the farmers' vehicles and the omnibusses, the tax bears more heavily numerically upon trucks engaged in interstate commerce than on intrastate vehicles. What this ratio of interstate to intrastate trucks affected by the tax is, however, is nowhere pleaded or demonstrated on the argument.

There is a statement in one of the affidavits read on the motion for injunctive relief that $2\frac{1}{2}\%$ of all the trucks in New York "will bear the entire cost" of the tax; but this, of course, would include intrastate trucks affected as well as interstate trucks, and the subject is left to the general conjecture that the interstate share is "unreasonable and disproportionate."

It is obvious that appellants do not contend that the tax will rest solely on interstate commerce because a very large group of the plaintiffs who have joined in this action to declare the

act invalid are themselves engaged in intrastate commerce, and the ratio of these alone, as they may be sifted out and apportioned from the very pleading now before the court, would suggest that the weight of the tax does not fall numerically, at least, in disproportion on interstate commerce. It must in fairness be admitted, however, that this ratio is not necessarily the ratio either of the number of trucks involved or of the whole number of owners affected.

We deem it to be an admissible inference from what the Supreme Court has said, as well as from what it has decided, and especially from what is implicit in *Morf* v. *Bingaman* (298 U. S. 407), the New Mexico tax-on-motor-caravan case, that there are circumstances under which a sensible regulation of the New York Legislature making a charge on the use of New York highways and having a basis in what the Legislature believed to be a traffic or highway need would be valid even if in its operational effect interstate commerce would always or usually pay the full bill.

If a type of truck were used solely in interstate commerce which by the thrust of weight or velocity affected the highways disproportionately to general use or imported with arrival a special traffic problem, the power of the State to make a fair charge for the use of its roads and for the cost of the special requirements of regulation would be undoubted. It would not be regarded by the United States as an undue burden on interstate commerce.

It is pretty clear that in *Morf* v. *Bingaman* (*supra*) the requirement for the New Mexico permit to move a motor vehicle on its own wheels for the purpose of selling it, under the 1935 statute, was primarily directed at interstate commerce. All vehicles licensed in New Mexico, or even owned by a licensed automobile dealer and operated under his dealer's license were exempted from the tax (pp. 408, 409).

New Mexico established " ports of entry " (p. 409). The class of business affected was the transportation of cars "across the state ", as the court observed (p. 410). Of course the statute in terms applied " alike to all automobiles " whether in intrastate or interstate commerce, as the court said (p. 410), but it would not be easy to imagine a statute which in its effect confined itself more completely to interstate commerce and excluded intrastate commerce. It would be even more difficult to imagine the kind of intra-New Mexico car that would pay the special tax, since all New Mexico licensed vehicles took their own exemptions.

The court held, upon the basis of the right of the State to regulate the charges upon and the traffic over its own roads, there was no undue burden on interstate commerce. The relative exclusions of intrastate commerce from the effect of the tax made by New Mexico were greater, in monumental proportions, than those made by New York under the statute here considered.

Where the tax falls equally, as the New York statute provides that it will, on intrastate vehicles of the same weight and following the same routes as interstate vehicles, the judicial inquiry traverses well-farrowed constitutional ground. A consistent judicial policy of the United States for over thirty-five years, from *Hendrick* v. *Maryland* (235 U. S. 610 [1915]) to *Capitol Greyhound Lines* v. *Brice* (339 U. S. 542 [1950]) is in the direction of upholding the power of the State to make this kind of a regulation directed at the use of the highways it has built and which it maintains for traffic originating beyond, as well as within, its borders.

That the State has withdrawn some vehicles from the operation of the statute and thus left the tax to be shared by the residuum of interstate as well as intrastate traffic is certainly not fatal to such a statute if such withdrawals and exemptions are reasonable; and their reasonableness is a judicial question viewed with a consistent liberality, as the Supreme Court cases readily will demonstrate.

A reading of the main cases in chronology gives perspective of the contour of the judicial policy. The basic principles which were thereafter regularly applied to the operation of motor vehicles coming into a State, were announced in *Hendrick* v. *Maryland* (235 U. S. 610, *supra*), which dealt with the validity of the Maryland statute of 1910. The law required an additional license on vehicles from other States using Maryland's highways.

The exercise of public power by a State in this direction in the regulation of its own traffic and its own highways was found not to be an unreasonable burden on interstate commerce. The basic difference between such a fee for a facility provided by the State and a direct tax on the free interstate personal movement of a citizen was demonstrated (p. 624).

The statute was regarded as a regulation of "dangerous machines", and the term of 1915 continues in 1952 to have a certain aptness of its own. *Kane* v. *New Jersey* (242 U. S. 160 [1916]) followed rather closely in sequence; affirmed the

doctrine announced in the *Hendrick* case (*supra*); held that New Jersey could impose its license charge on traffic passing through as well as into the State; that it was not fatal to the statute that it charged the same fee whether the use of the roads was great or little. The court implied that the State would be free to make a charge based upon actual special use (p. 167).

In 1927 the court held that a motor truck line engaged exclusively in interstate commerce was not exempt from the operation of Ohio's tax graduated according to the number and capacity of the vehicles used. (*Clark* v. *Poor,* 274 U. S. 554.) Users of the highways, even though engaged exclusively in interstate commerce, may " be required to contribute to their cost and upkeep." (P. 557.) In *Interstate Transit, Inc.,* v. *Lindsey* (283 U. S. 183 [1931]) a Tennessee statute which in terms imposed a tax on interstate motor busses was held invalid because the court could not see that the charge made was " compensatory " for the use made of the highways of the State (p. 190) and its decision was consistent in the stated principle with what the court had done before, and with what the justices of the court had written before.

The growth of the concept of charge for special use, noticed in *Clark* v. *Poor* (*supra*), is to be seen as it develops in *Aero Transit Co.* v. *Commrs.* (332 U. S. 495 [1947]) which considered a Montana statute imposing " in consideration of the use of the highways of this state " a flat tax and a gross revenue tax on motor carriers. Its application to a carrier engaged exclusively in interstate commerce was held not to be an invalid burden on interstate commerce. The " especially arduous use " of roadways made by " truckers of heavy goods " was noted by the court in touching upon the reasonableness of the statute's effect on interstate commerce (p. 503).

Finally the court had before it in 1950 again a Maryland statute in *Capitol Greyhound Lines* v. *Brice* (339 U. S. 542, *supra*). A tax of 2% on the fair market value of motor vehicles used in interstate commerce was held valid. A far broader conception of the kinds of tax which might be imposed was envisioned within a permissible pattern of State highway regulation than the court had previously entertained, both in language used and in the scope of action that was implicit.

It was observed that the taxes which had been held valid had " taken many forms " (p. 544). Examples were stated. It was added that the list suggested did not " begin to exhaust the innumerable factors " bearing on fair compensation to a

State by a carrier using its roads (p. 544). A very wide range of choice was said to rest in the State in the regulation of the use of its highways.

Reasoning from the flat fee cases, which, of course, were not proportionately based on the quantum of highway use, the court in effect held that any reasonable charge was within the competence of a State, and its validity as a burden on interstate commerce is to be judged not "by formula" but by "result" (p. 545). No one could read these cases objectively, we think, and regard the tax here imposed by the New York Legislature as an undue burden on interstate commerce.

Rather closely related to the question of the burden on interstate commerce and often considered with that question is whether a State which collects a highway use tax must devote its proceeds entirely to the maintenance of the roads.

The court has consistently avoided imposing this crippling condition, and in part the policy seems to stem from the fact that the State built the roads in the first place at a cost to all its citizens and must continue to maintain them, and that the United States will not attempt minute regulation of State government in this respect.

A very plain statement of this policy was made by Mr. Justice Stone in *Morf* v. *Bingaman* (298 U. S. 407, 412, *supra*). He observed that " it is immaterial whether the state places the fees collected in the pocket out of which it pays highway maintenance charges or in some other." Affirmation of the principle is to be found, for instance, in *Clark* v. *Poor* (*supra*) and in *Aero Transit Co.* v. *Commrs.* (*supra*), cases to which we have referred before.

As far as the New York Constitution is concerned the Legislature is under no necessity to turn all the proceeds of a charge on the use of its highways into a highway fund, and a proposal to earmark gasoline taxes solely for highway use was rejected by the Constitutional Convention of 1938.

We turn, then, to the reasonableness of the classifications made by the Legislature in imposing the tax. Appellants argue rightly that there is a distinction between classification as it may result in a deprivation of equal protection of the law and classification as it may withdraw so much intrastate activity from the operation of the tax as to leave interstate activity to carry a disproportionate burden. It must be admitted, however, even if the questions are logically quite distinct, that courts have often treated them conjunctively.

The test, of course, is the reasonableness of the classification, and this is a legal concept without true objective standard. In its judicial application it depends on what the judges who get the case think is fair. Their thinking on this is not loose and vagrant opinion, but is a part of a tradition which can be sensed more easily than it can be stated definitively.

Our feeling is that when the New York Legislature fixed the beginning point of the special use tax on heavy trucks at 18,000 pounds its judgment was reasonable, and the classification was not discriminatory in the sense that the equal protection of the laws was thereby withdrawn from the owners of the heavy vehicles affected by the tax. We know that a good argument can be made, and, indeed, is made here by appellants, that axle relationship to weight or other technical criteria would be preferable as a tax standard.

But if we were very strongly of opinion that as a matter of logic this would be a better standard for the statute to fix, the question would be a legislative and not a judicial question, as it necessarily is in all debatable fields of statutory regulation. The correlation between the weight, speed and the greatly growing incidence of the heavy truck and deterioration of the modern road are subjects well within the range of legislative observation and regulation.

The exclusion of the omnibus from the tax upon the ground of other special and relevant taxation, and of zonal and local city and village traffic upon the ground that their effect on the State highways as a whole is relatively small and bears most heavily on local streets and roads, is within the legislative competence and is not unreasonable. The New York statute certainly does not in this respect go nearly so far as the one considered in *Morf* v. *Bingaman* (*supra*).

In the light of the 1932 and 1933 decisions of the Supreme Court in *Continental Baking Co.* v. *Woodring* (286 U. S. 352) and *Hicklin* v. *Coney* (290 U. S. 169) the zonal and local classifications and the exemptions to farmers likewise would fall within the power of the Legislature.

The operational effect of a use tax in zones established by the Public Service Commission is not, in our view, an invalid delegation of legislative power. The statute must be construed as an adoption by the Legislature of an existing territorial arrangement made by the commission. It may adopt for many legislative purposes geographic actualities which may be changed by local government or other public power without invalidating the statute which refers to the existing area.

A statute applying in a village, for instance, would apply somewhat differently in area if the village lines were changed by local authority. There is a whole range of subjects in which administrative agencies work out the details of general policies stated by the Legislature. The regulatory powers delegated to the Conservation Department are a good example. We do not regard the zonal provisions of the statute as an invalid delegation of legislative power. There is no substance to the point that the statute incorporates another statute by reference.

The order and judgment should be affirmed, with costs.

FOSTER, P. J., HEFFERNAN, BREWSTER and COON, JJ., concur.

The court certifies that in its opinion questions of law are involved which ought to be reviewed by the Court of Appeals and an order permitting such an appeal may be entered by appellants if they are so advised. For this purpose and to allow opportunity for appropriate application to the Court of Appeals, the stay heretofore granted is continued in effect until March 14, 1952, and if the Court of Appeals is not then in session, until the opening of its next session.

Order and judgment affirmed, with costs.