Frank H. SCHMID, Clerk United States Court of Appeals, Plaintiff,

v.

R. B. MAXWELL et al., Defendants.

R. B. MAXWELL, John S. Ashley and Eve B. Ashley, Cross-Claimants,

v.

Alan CRANSTON, Controller of the State of California, Cross-Defendant.

STATE OF CALIFORNIA, acting by and through Alan CRANSTON, Controller of the State of California, Cross-Claimant,

v.

R. B. MAXWELL et al., Cross-Defendants.

Matthew C. CARBERRY, Sheriff of the City and County of San Francisco, Cross-Claimant,

v.

R. B. MAXWELL et al., Cross-Defendants. Civ. No. 39153.

United States District Court N. D. California, S. D. March 19, 1964.

Cecil F. Poole, U. S. Atty., N. D. Cal., San Francisco, Cal., for Frank H. Schmid.

Stanley Mosk, Atty. Gen. of Cal., for Alan Cranston.

Brobeck, Phleger & Harrison, San Francisco, Cal., for Maxwell & Ashleys.

James C. Purcell, San Francisco, Cal., for Matthew Carberry.

OLIVER J. CARTER, District Judge.

This is an action of interpleader brought by a disinterested stakeholder, Frank H. Schmid, Clerk of the United States Court of Appeals for the Ninth Circuit. The complaint in interpleader named five defendants: R. B. Maxwell, John S. Ashley and E. B. Ashley, citizens of the State of Oregon; Alan Cranston, Controller of the State of California; and Matthew C. Carberry, Sheriff of the City and County of San Francisco. John S. Ashley and E. B. Ashley ("the Ashleys") and Maxwell filed a cross-claim against Cranston, and are cross-defendants on the cross-claims filed by Cranston

and Carberry. Pursuant to stipulation by the parties, and by order of the Court, Schmid and Carberry have been dismissed as parties, since neither person claims an interest to the sum of $25,000, which plaintiff in interpleader had deposited into the registry of this Court. Maxwell died since commencement of this action and the executrix of his estate, Mary R. Maxwell, has been substituted as a party in his place. The adverse claimants remaining in the action are of diverse citizenship. On one side are the Ashleys and Maxwell (collectively called "the Maxwell claimants"), on the other side is the State of California, acting by and through Cranston (called "the State"). Jurisdiction is founded on diversity of citizenship and interpleader, 28 U.S.C. § 1332 and § 1335.

The money came into the hands of the Clerk of the Court of Appeals, then Paul P. O'Brien, in the following manner: an injunction against Alexander L. Vincze, O. K. Transfer Co., Pioneer Truck Rentals, Inc., and Driver's Service, Inc. (collectively called "Vincze"), had been issued by the United States District Court for the District of Oregon after litigation between the Interstate Commerce Commission and Vincze, the defendant in that action. Vincze appealed and asked the Court of Appeals for a stay of the injunction pending appeal. The Court of Appeals, as a condition to the stay, required the posting of a supersedeas bond in the amount of $25,000, for payment of any damages which appellees might suffer because of the stay. On January 30, 1959, a cashier's check from Vincze, as security in the required amount, arrived by mail in the office of the Clerk accompanied by a letter written by Maxwell, one of Vincze's counsel on appeal, which said in part:

> "It is my hope that your practice will allow you to hold this check for a reasonable period of time and we hope and expect to substitute a surety bond for the check within a reasonable time."

The Clerk placed the cashier's check in his office safe, acknowledged receipt of the check and of Maxwell's letter, and informed Maxwell that the check would be held awaiting substitution of a bond. On February 24, 1959, the Clerk again wrote Maxwell inquiring as to when the bond would be substituted for the check. By March 9, 1959, no response to the Clerk's letters had been received by him and no surety bond had been substituted for the check. On that date the Clerk deposited the check in his disbursing account.[1]

On June 17, 1959, the Court of Appeals affirmed the District Court in the Oregon injunction action, and pursuant to inquiry by the Clerk as to disposition of the $25,000, all parties to the appeal filed a stipulation that no claims would be made against the fund and that the fund should be paid to Maxwell. The Clerk prepared a check payable to Maxwell, but before it was mailed, a warrant for collection of the California Motor Vehicle Transportation License Tax liability of Vincze was issued by Cranston, who is charged by California law with collection of the tax, and was served together with a "Notice of Levy" and an "Answer to Garnishment" upon the Clerk by Carberry. The Clerk immediately wrote a letter to Maxwell which explained this turn of events, voided the check and redeposited the $25,000 pending instructions by the Court of Appeals. On May 20, 1960, the Court of Appeals ordered its Clerk to file the instant complaint in interpleader and to deposit the $25,000 with the Clerk of this Court.[2]

The Ashleys assert an interest in the deposit because of a written assignment of part of the supersedeas fund, executed to them by Vincze on February 25, 1959, as partial security for a $20,000 promissory note. Maxwell asserts an interest in the deposit because of Vincze's oral assignment of the amount remaining in the fund after payment to the Ashleys, if any, as partial payment for services

---

1. Stipulation of Facts, stipulation nos. 1, 2, 3, 7.

2. Id., nos. 8, 9, 10, 12, 15.

rendered by Maxwell as Vincze's attorney.[3] Vincze, who posted the supersedeas fund, is not a party to this action. The State asserts an interest in the entire amount on deposit by virtue of an alleged tax lien on the supersedeas fund as prior property of Vincze.

The State's claim against Vincze arises out of his liability to the State for taxes incurred under the Motor Vehicle Transportation License Tax Law, California Revenue and Taxation Code, sections 9601 et seq., the so-called truck tax—a tax upon gross receipts earned by an "operator" who engages in transportation for hire by motor vehicle upon California highways. Vincze was an "operator" subject to the tax from September, 1953, until April, 1959. The State made demand for payment upon Vincze, but nothing was paid.[4]

The lien provisions of the truck tax are in sections 10096–10100 of the Code. Section 10096 relates to the nature and extent of the lien:

> "The license tax, penalties, and interest accruing under this part constitute a lien upon all motor vehicles and other personal property of the operator and a lien upon real property as provided in Section 10099."

Section 10096 was changed to read in its present form in 1947. Prior to 1947, it read:

> "The license tax, penalties, and interest accruing under this part constitute a lien upon all property of the operator used in producing gross receipts from operations."

It is the contention of the Maxwell claimants that the California Legislature by the 1947 amendment intended to expand the scope of the lien to include all real property of the operator whether or not the property was used in the production of gross receipts, and that the phrase, "other personal property of the operator," derives its meaning from the phrase, "motor vehicles," and must be taken to mean other personal property used to produce gross receipts in the trucking business.

■ A comparative reading of the section before and after the 1947 amendment does not indicate such a narrow construction. The interpretation suggested by the Maxwell claimants would make the words, "other personal property of the operator," meaningless. Section 10096 and its antecedent statutes, limiting the lien to property used in operations, had read substantially the same since its first enactment in 1933 and through amendments in 1937 and 1941. Deleting the limitation for the first time in 1947 is an indication of legislative intent to extend the lien to all property of the operator, in accord with the plain meaning of the language.

The 1947 amendment to Section 10097 further supports this interpretation. Section 10097 states:

> "The lien *upon personal property* attaches at the time of the earning of the gross receipts and has the effect of an execution duly levied against all property of the operator mentioned in Section 10096. The lien *upon personal property* remains until the tax and all penalties and interest accruing thereon are paid, or the property is sold for the payment thereof." (Emphasis added.)

The words emphasized were added in 1947 and point up the intent of the Legislature to distinguish "other personal property" from "motor vehicles." By distinguishing between the two types of personal property in section 10096, the Legislature maintained uniformity throughout the Act.

The same distinction is made in section 10098 which states:

> "The lien as to the tax and interest, but exclusive of penalties, upon *personal property* is paramount to all private liens or encumbrances of whatever character, *and* to the rights of any conditional vendor or any other holder of the legal title, in or to

*any motor vehicle the privilege of operating which is subject to the license tax."* (Emphasis added.)

Here the Legislature distinguishes between "motor vehicles" and "personal property."

The Court has no doubt that the California Legislature intended the truck tax lien to be applied in the broadest sense possible. The Court concludes that section 10096 was intended by the Legislature to include all personal property of the operator, whether or not the property was used in production of the gross receipts which are the subject of the tax. Once the lien attaches, it remains until the tax, penalties and interest are paid or until the property is sold for payment thereof. Thus, the tax lien attached to Vincze's property in the hands of the Clerk prior to the transfer of his interests to the Maxwell claimants.

The Maxwell claimants challenge the constitutional application of the unrecorded tax lien on the supersedeas fund for the collection of Vincze's prior truck taxes. They argue that the attempted exercise of the State's power to reach former property of Vincze which was not used in his trucking business, after they became transferees of the property without notice, is an unreasonable and arbitrary exercise of the State's taxing power and deprives them of their property in violation of the due process clause of the Fourteenth Amendment of the United States Constitution.

The Court concludes that the lien as applied to the $25,000 in question is constitutionally valid. This conclusion is based upon International Harvester Credit Corp. v. Goodrich, 1956, 350 U.S. 537, 76 S.Ct. 621, 100 L.Ed. 681; Schlothan v. Territory of Alaska, 9 Cir., 1960, 276 F.2d 806; and Hillmert v. State Board of Equalization, 1963, [218 A.C.A. 604], 32 Cal.Rptr. 588.

International Harvester, supra, held an unrecorded state tax lien constitutionally valid to give the tax lien upon certain trucks priority over the rights of conditional vendors of the trucks sold. The Court emphasized the reasonableness of the lien because of the state's costly construction and maintenance of its highways for heavy traffic, and upheld the state's claim. The vendor was chargeable with statutory knowledge that the person with whom he was dealing might be subject to an unrecorded state tax lien which had priority over the security lien of the conditional vendors. Here the Maxwell claimants are chargeable with knowledge of the truck tax lien statute, for they knew the property was within the State of California and they had actual knowledge that they were transferees of property of an "operator". [5]

Schlothan v. Territory of Alaska, supra, held statutory notice sufficient to meet the requirements of due process where a tax lien for prior taxes was imposed upon property other than property used to create the tax liability. At pages 811, 812 of 276 F.2d, the court said:

> "What affronts justice here, appellant tells us, is that the Alaska lien statute purports to impose a prior lien regardless of whether the tax was incurred in the use of the particular property against which the lien is asserted, or was incurred in connection with the use of other property anywhere in Alaska.
>
> \* \* \* \* \* \*
>
> "On the authority of International Harvester Credit Corporation v. Goodrich, 350 U.S. 537, 76 S.Ct. 621, 626, 100 L.Ed. 681, the constitutionality of such a statute challenged on the ground of unreasonableness must be upheld."

---

5. Stipulation of Facts, Exhibit B, the instrument of assignment, recited that the money was on deposit as a result of litigation between Vincze and the Interstate Commerce Commission, and was executed by Vincze—i. e., O. K. Transfer Co., Pioneer Truck Rentals, Inc., Driver's Service Inc., and Alexander L. Vincze as an individual. Maxwell was one of counsel on the appeal involving Vincze's trucking business.

Hillmert v. State Board of Equalization, supra, held the California truck tax lien constitutionally valid upon the property of a subsequent out of state purchaser of a truck for taxes incurred by an earlier operator of the same truck. Childress had purchased a truck in Texas, the vendor holding title for security. Childress operated the truck, together with other trucks, in several states including California, and incurred truck tax liability. After repossession of the truck by the Texas vendor, it was sold to Hillmert, who drove the truck into California, where it was seized by the State for payment of Childress' prior tax liability incurred by all of Childress' operations. Both the property and the transfer of interests in the property took place in Texas. Upon these facts, the tax lien was held valid as applied. In the instant case, the transfer of interests in the property took place in Oregon, but the property was located in California.

The Maxwell claimants also urge that the tax lien imposed to secure Vincze's liability could not attach to the cashier's check because it became the property of the Clerk of the Court at the moment it was received by him. Thereafter, it is claimed, Vincze had only an intangible reversionary interest in the fund created by the check since he might not receive back any of the money on deposit. The State claims the language of the letter from Maxwell which accompanied the check, to "hold this check for a reasonable period of time" until a surety bond could be substituted, and the Clerk in complying with the request, created a bailment of the check.

A few cases have dealt with the incidents of ownership of funds on deposit with a court. The Lottawanna, 1874, 20 Wall. (87 U.S.) 201, 22 L.Ed. 259, pointed out that although the court has custody of funds on deposit, it claims no title therein but merely holds the funds for delivery to whom it may belong. Branch v. United States, 1879, 10 Otto (100 U.S.) 673, 25 L.Ed. 759, held that the risk of loss of money in custody of the clerk pending litigation and deposited by him in a bank which failed was upon the depositor as owner of the fund. Pennsylvania Railroad Co. v. United States, 3 Cir., 1938, 98 F.2d 893, held that title to a fund of moneys deposited by the railroad company many years before on behalf of its bondholders passed to the bondholders immediately upon deposit, that the fund was held in trust for the unknown owners, and that the railroad company had no claim against the United States for return of that portion of the fund unclaimed. City of San Antonio v. Astoria, 1934 (Tex.Civ.App.) 67 S. W.2d 321, held that the appellant was the owner of money on deposit pending appeal and he took the risk of loss when the clerk absconded with the money. Phipps v. Watson, 1933, 108 Fla. 547, 147 So. 234, held that the risk of loss of a certified check for failure of the drawee bank was upon the defendant as owner of the check which was deposited with the clerk by plaintiff as tender of performance due under a contract. Mundell v. Wells, 1919, 181 Cal. 398, 184 P. 666, 7 A.L.R. 383, and Wright and Taylor v. Dougherty, 1908, 138 Iowa 195, 115 N. W. 908, held that money on deposit as bail with the clerk to secure the depositor's appearance is owned by the depositor. These cases indicate that the purpose of the deposit of money in court determines the question of the rights and liabilities therein, and that when there has been a deposit for safekeeping or a deposit for security, the depositor normally assumes the incidents of ownership of the deposit.

It appears to the Court that the incidents of ownership of the cashier's check were in Vincze. The record also indicates that the persons who dealt with the supersedeas fund created by the cashier's check treated it as property belonging to Vincze. The written assignment to the Ashleys shows on its face that Vincze and the Ashleys realized that the fund was deposited as security for any damages appellee might suffer because of the stay of the injunction against Vincze pending appeal. The Clerk of the Court treated the fund as

property of Vincze. He accepted the cashier's check on Vincze's terms. He wrote one of Vincze's counsel after affirmance of the district court judgment and prior to knowledge of the assignments, saying, "I have the custody of the deposit * * *" and asked the parties to stipulate to the disposal of the fund. The stipulation filed referred to "the Sum of Twenty-Five Thousand ($25,000) Dollars, having been deposited with the Clerk." [6]

The Maxwell claimants assert that the California tax lien did not attach to the deposit in the hands of the Clerk because the deposit was in custodia legis. They have cited many cases holding that the funds in the hands of a court clerk are not subject to attachment or garnishment. In so arguing they misconceive the purpose of the custodia legis rule. That a tax lien may attach to money in the hands of a court clerk is beyond question. In this regard, process used to enforce the lien, such as attachment or garnishment, should be distinguished from the attachment of the tax lien to the money. The distinction was illustrated by In re Tyler, 1893, 149 U.S. 164, 13 S.Ct. 785, 37 L.Ed. 689, where, after property came into custody of the circuit court, it became subject to a state statutory tax lien. Upon attempted seizure of the property for the collection of taxes by the local sheriff, the Court said:

> " * * * Undoubtedly, property so situated [in the custody of the law] is not thereby rendered exempt from the imposition of taxes by the government within whose jurisdiction the property is, and the lien for taxes is superior to all other liens whatsoever, except judicial costs, when the property is rightfully in the custody of the law; but this does not justify a physical invasion of such custody, and a wanton disregard of the orders of the court in respect of it. * * *"

Weir v. Corbett, D.C.W.D.Wash., 1957, 158 F.Supp. 198, involved an assignment of money on deposit with the clerk of the court for bail, an attempted garnishment issued out of a state court, and the question was whether the tax lien attached to the deposit in the hands of the clerk. The Court assumed without comment that the assignment was valid, and held that the attempted garnishment was void and that the tax lien attached to the money in the hands of the clerk. See, also, Simpson v. Thomas, 4 Cir., 1959, 271 F.2d 450, and Welsh v. United States, 1955, 95 U.S.App.D.C. 93, 220 F.2d 200, holding that tax liens attach to money in custodia legis. The purpose of the custodia legis rule is to preserve the power of the court with which moneys have been deposited for a judicial purpose to dispose of such money in accordance with that purpose, and when that purpose has been satisfied the rule is no longer necessary to protect the power of the court. Here the money was deposited as a bond to pay damages which might be incurred on appeal. There were none, and the Court of Appeals had no further requirement for the money for judicial purposes, and the money was then available for payment to the persons entitled. The lien of the California tax attached at the time of deposit of the money in California, subject to its use for judicial purposes and, when those purposes ceased, it became subject to the process of the State for enforcement of the lien. The Clerk of the Court of Appeals by filing his interpleader action rendered unnecessary any further action by the State to enforce its tax lien.

The Court concludes that the State's tax lien attached to Vincze's funds in the hands of the Clerk of the Court of Appeals in his office in San Francisco, California, prior to assignment of the funds, and that the assignments did not extinguish the prior tax lien on the fund.

Judgment, therefore, is awarded to the State with its costs of suit, and this opin-

6. Stipulation of Facts, stipulation nos. 9, 10.

ion shall constitute the findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, and counsel for the State is directed to prepare and present a judgment in accordance herewith.