Mary R. MAXWELL, as Executrix of the Estate of R. B. Maxwell, et al., Appellants,

v.

STATE OF CALIFORNIA, acting by and through Allan CRANSTON, Controller of the State of California, Appellee.

No. 19457.

United States Court of Appeals Ninth Circuit.

Feb. 8, 1965.

Charles E. Hanger, Brobeck, Phleger & Harrison, San Francisco, Cal., for appellants.

Thomas C. Lynch, Atty. Gen. of Cal., E. P. Goodman, Deputy Atty. Gen., Harry W. Low, Deputy Atty. Gen., San Francisco, Cal., for appellee.

Before HAMLIN, JERTBERG and BROWNING, Circuit Judges.

JERTBERG, Circuit Judge.

This appeal is from a judgment in favor of the State of California and comes to us from the United States District Court for the Northern District of California, Southern Division.

The facts are not complex and briefly, are as follows:

During the period September 1953 to April 1959, Alexander Vincze became indebted to the State of California in an amount now over $25,000 which consists of motor vehicle license taxes, penalties and interest. Vincze became liable for said taxes as controlling stockholder of several Oregon trucking companies whose vehicles used California highways. Demand for payment by the State was made upon Vincze but nothing was paid.

In an unrelated action brought by the Interstate Commerce Commission, an injunction was issued against Vincze. He appealed and asked this court for a stay of the injunction pending appeal. The stay was granted on January 28, 1959 upon condition that Vincze post a supersedeas bond in the amount of $25,000 to indemnify the appellees of that action from any damages sustained by reason of the stay in the event that the judgment appealed from was affirmed.

Vincze, through his attorney, mailed a cashier's check for $25,000 to the Clerk of this Court expressing the intention to substitute a surety bond within a reasonable time. When the substitution was not made after two letters of inquiry to Vincze's attorney, the check was deposited to the Clerk's disbursing account in the Federal Reserve Bank.

By written assignment executed February 25, 1959, Vincze assigned "all of the money on deposit" with the Clerk to John Ashley and Eve Ashley, co-appellants herein, as security for a $20,000 loan made by the Ashleys to Vincze and evidenced by a promissory note. Vincze and the Ashleys thereafter orally agreed that Vincze's attorney, Maxwell, should be paid his attorney's fees out of any funds remaining after the sum due the Ashleys had been satisfied. No notice was given to the Clerk of such assignment.

On June 17, 1959, judgment in the aforementioned injunction action was affirmed [Vincze v. I.C.C., 267 F.2d 577 (9th Cir.1959)]. The parties to that appeal filed a stipulation that no claims would be made against the fund and that the fund should be paid to Maxwell. The Clerk of this Court prepared a check payable to Maxwell but before it could be mailed, a warrant for collection of the California Motor Vehicle Transportation License Tax liability of Vincze was served together with a "Notice of Levy" and an "Answer to Garnishment" upon the Clerk. On May 20, 1960, this court instructed the Clerk to deposit the $25,-000 with the Clerk of the District Court and to interplead by complaint the various claimants.

Appellants specify two errors: (1) That the Court below erred in holding that the fund deposited with this Court may be subjected to State levies or liens; and (2) that the Court below erred in finding that the lien provisions on which the State's priority is based are constitutional.

The question first arises as to whether or not a lien of this nature may attach to funds held in *custodia legis*.

Sections 10096 and 10097 of the California Revenue and Taxation Code provide:

"§ 10096. Property subject to lien

"The license tax, penalties, and interest accruing under this part constitute a lien upon all motor vehicles and other personal property of the operator and a lien upon real property as provided in Section 10099.

"§ 10097. Attachment of lien; time; effect; duration

"The lien upon personal property attaches at the time of the earning of the gross receipts and has the effect of an execution duly levied against all property of the operator mentioned in Section 10096. The lien upon personal property remains until the tax and all penalties and interest thereon are paid, or the property is sold for the payment thereof."

Title to the fund when received by the Clerk of this Court, and before assignment, was in Vincze subject to disposition by this court for the purposes for which it was posted. As "other personal property of the operator" then on deposit within the State, a state tax lien arose upon the funds so held. See, South Carolina Public Serv. Auth. v. 11,754.8 Acres of Land, etc., 123 F.2d 738 (4th Cir.1941). This view is in accord with those decisions where Federal tax liens attached to property similarly held. Simpson v. Thomas, 271 F. 2d 450 (4th Cir.1959), and cases there cited, footnote #3, at p. 452.

Appellants characterize the issue posed in their first assignment of error as one of interference with the Court's custody of the fund in its protection. In support of this proposition, it is argued that attachments, levies, and garnishments may not disturb the Court's custody. There is a distinction, however, between a right to enforce a charge or claim upon property and the enforcement itself. The distinction as was noted by the District Court, is expressed in the Supreme Court

case of In re Tyler, 149 U.S. 164, 182, 13 S.Ct. 785, 790, 37 L.Ed. 689 (1893), as follows:

> "Undoubtedly, property so situated [*in custodia legis*] is not thereby rendered exempt from the imposition of taxes by the government within whose jurisdiction the property is, and the lien for taxes is superior to all other liens whatsoever, except judicial costs, when the property is rightfully in the custody of the law; but this does not justify a physical invasion of such custody, and a wanton disregard of the orders of the court in respect of it."

The mere existence of such rights in the property, whether they be liens or assignments of the nature here involved, do not carry with them the consequences that interrupt the orderly progress of judicial proceedings as the enforcement of those rights while the property remains in the custody of the court well might.

In United States v. Klein, 303 U.S. 276, 281, 58 S.Ct. 536, 82 L.Ed. 840 (1938), the question for decision was whether certain Pennsylvania statutes were unconstitutional because they authorized interference with a Federal Court and an invasion of the sovereignty of the United States, in so far as they purported to confer jurisdiction on a state tribunal to declare the escheat of moneys deposited in the registry of the Federal Court. The Court, while upholding the constitutionality of the statute, adverted to the power the state may exercise over persons and property within its territory, and said:

> "While a federal court which has taken possession of property in the exercise of the judicial power conferred upon it by the Constitution and laws of the United States is said to acquire exclusive jurisdiction the jurisdiction is exclusive only in so far as restriction of the power of other courts is necessary for the federal court's appropriate control and disposition of the property."

■ Upon cessation of the purpose for which the fund is taken into the custody of the court, and upon notice of rival claimants to it, it is entirely proper that a proceeding be instituted by that court to determine its rightful disposition. Bankers' Mortg. Co. of Topeka, Kan. v. McComb, 60 F.2d 218, (10th Cir. 1932); See and Compare, Marshall v. People of State of New York, 254 U.S. 380, 41 S.Ct. 143, 65 L.Ed. 315 (1920); Clarke v. Chicago, B. & Q. R. Co., 91 F.2d 561, (10th Cir.1937).

It is next contended that Sections 10096 and 10097 of the California Revenue and Taxation Code, supra, are unconstitutional in that, as applied to appellants, those Sections offend the Due Process Clause of the 14th Amendment. Such Code Sections are objectionable, appellants argue, because taken together they permit the State's lien to attach, without filing of notice, upon all personal property of the taxpayer, and without a fixed expiration date. These characteristics of California's statutory tax lien which appellants assert are repugnant to the 14th Amendment are likewise present in the Federal Government's statutory tax lien provision.

> "§ 6321. Lien for taxes
>
> "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C.A. § 6321 (1954).[1]

■ The Supreme Court decision most apposite to the facts in the instant

---

[1]. Although a constitutional question was not presented, for a comparison of the federal statute cited and the Vermont statutory tax lien which is substantially the same as that of California, See, United States v. State of Vermont, 377 U.S. 351, 84 S.Ct. 1267, 12 L.Ed.2d 370 (1964).

case, is International Harvester Credit Corp. v. Goodrich, 350 U.S. 537, 76 S.Ct. 621, 100 L.Ed. 681 (1956). There the taxpayer was a motor carrier who operated several of his trucks on New York highways. The New York statutory lien provision designed to insure collection of the use tax, provided: that a lien attached upon all of the taxpayer's motor vehicles at the time of their operation within the state; that the lien was paramount to prior liens and rights of title; and that the lien remained effective until the taxes, penalties, and interest were paid or the vehicles were sold for the payment thereof. While operating his vehicles on New York highways, thereby incurring such use taxes, the carrier purchased two additional trucks under a conditional sales agreement from a foreign corporation and a third truck from a New York corporation, also under a conditional sales agreement. Upon default of the carrier, all three trucks subsequently were returned to the possession of their respective vendors. Against the contention that the application of the statutory lien was a denial of Due Process under the 14th Amendment, it was held that the State's lien for unpaid taxes, penalties, and interest which had accrued from the operation of all the carrier's vehicles, over a two year period part of which antedated the sale of the three trucks to the carrier, could be enforced against those three vehicles. The result was not affected by the fact that the conditional vendors were unaware of the unrecorded lien that attached at the time of the sales. Cf., United States v. Snyder, 149 U.S. 210, 13 S.Ct. 846, 37 L.Ed. 705 (1893).

In their brief, appellants argue that the New York tax lien statute under consideration in International Harvester, supra, differs from that of California in that there the statute extended only to "all motor vehicles and vehicular units of such carrier" and not to "other personal property" as does Section 10096, supra.

A similar distinction was raised before us in Schlothan v. Territory of Alaska, 276 F.2d 806 (9th Cir.1960). In that case, the Alaska statute complained of imposed a license tax lien upon all real and personal property of the person liable for the tax, and not only upon the property the use of which gave rise to the liability. In rejecting the claim of unconstitutionality we said, at pp. 811, 812:

"What affronts justice here, appellant tells us, is that the Alaska lien statute purports to impose a prior lien regardless of whether the tax was incurred in the use of the particular property against which the lien is asserted, or was incurred in connection with the use of other property anywhere in Alaska. [Footnote omitted].

\* \* \* \* \*

"Appellant argues that International Harvester is to be distinguished from the instant case because the tax there in question, unlike the Alaska tax, was imposed for the purpose of compensating the state for the use of the highways. The court there pointed out that the burden placed on the highways by the operation of the trucks which were subject to the conditional sales contracts 'has been precisely the same as though the carrier had held unencumbered title to the trucks.'

"In our opinion, however, the circumstance just mentioned does not adequately distinguish International Harvester from the case before us."

■ Appellants further contend that the lien is being applied against non-residents who, as assignees, have no connection with the taxpayer. However, we are not presented with such a question since, in the instant case, the lien of the State attached prior to assignment of the fund.

"The priority of the state extends to all property of the debtor within its borders, whether the debtor be a resident or nonresident and whether the property be in his possession or in custodia legis." Marshall v.

People of State of New York, supra, 254 U.S. at p. 385, 41 S.Ct. at p. 145.

The judgment appealed from is affirmed.