[Civ. No. 26944.   Second Dist., Div. One.   July 24, 1963.]

CARL A. HILLMERT, Plaintiff and Appellant, v. STATE BOARD OF EQUALIZATION, Defendant and Respondent; THE PEOPLE, Cross-complainant and Respondent.

A. W. Brunton for Plaintiff and Appellant.

Stanley Mosk, Attorney General, Dan Kaufmann, Assistant Attorney General, and Neal J. Gobar, Deputy Attorney General, for Respondents.

WOOD, P. J.—This is an action against the State Board of Equalization for recovery of money paid, under protest, as taxes on the use of fuel in operating trucks upon the highways. A cross-complaint was filed by the People of the State of California on behalf of the Board of Equalization and Controller for recovery of money which allegedly had been refunded erroneously to plaintiff after plaintiff had paid motor vehicle transportation taxes under protest.

Judgment was in favor of defendant upon the complaint, and in favor of cross-complainant upon the cross-complaint. Plaintiff (and cross-defendant) appeals from the judgment.

On November 30, 1955, the Mack Motor Truck Corporation in Dallas, Texas, entered into an agreement to sell a new Mack truck to G. W. Siler who was doing business as Waco Mack Sales in Waco, Texas. The seller took a chattel mortgage on the truck to secure the unpaid part of the purchase price.

On December 5, 1955, Siler leased the truck to Pete Childress, of Houston, Texas, for one year, and made an informal agreement with Childress to the effect that upon payment of a certain amount of money title to the truck would pass to Childress subject to the chattel mortgage held by the Mack Motor Truck Corporation.

Childress operated the truck on highways in California and other states from December 5, 1955, to August 3, 1956, and by reason thereof incurred liability to the State of California for use fuel taxes and transportation taxes. Also during that time, and for approximately a year prior thereto, he also operated three other trucks on California highways and by reason thereof he had incurred liability to the State of California for use fuel taxes and transportation taxes.

On August 3, 1956, the Mack truck was returned to Mack Trucks, Inc. (formerly Mack Motor Truck Corporation), which thereafter (on September 19, 1956) sold the truck to plaintiff Hillmert, of San Antonio, Texas, for $14,500—the unpaid balance of the original purchase price stated in the agreement to sell to Siler.

Plaintiff then (September 1956) began operating the Mack truck on the highways of California and other states. About

January 28, 1956, while the truck was in Redding, California, representatives of the State Board of Equalization and the Controller seized the truck, claiming a lien on it for use fuel taxes and transportation taxes which had accrued in connection with the use of that truck and the three other trucks which had been operated by Childress. In order to secure the release of the truck, plaintiff paid, under protest, the delinquent use fuel taxes of $1,715.18 (including expenses of seizure) covering the period from November 1954 to September 1956, and paid the delinquent transportation taxes of $824.78. The amount due from Childress by reason of use of fuel in the Mack truck (only) was $292.32, plus penalties; and the amount due from him by reason of using the Mack truck (only) for transportation was $179.60, plus penalties.

Thereafter plaintiff filed claims for refund of said payments. The claim for refund of use fuel taxes was denied on December 18, 1958; and the claim for refund of transportation taxes was granted upon the basis of plaintiff's representation that Childress had not been the owner of the Mack truck but had operated it under a "lease-purchase" agreement with the owner, G. W. Siler. The amount of the transportation taxes ($824.78) was refunded to plaintiff on February 13, 1959.

Plaintiff had been engaged in the trucking business in California since 1952 and had had experience in making reports regarding use fuel taxes and transportation taxes.

This action to recover the amount paid for use fuel taxes ($1,715.18) was commenced on February 6, 1959. The cross-complaint to recover the amount refunded for transportation taxes was filed May 29, 1961.

At the trial the plaintiff contended, among other things, that defendant could not have a lien on the Mack truck for use fuel taxes incurred for use of fuel in the three other trucks operated by Childress; and that the refund by defendant of the transportation taxes was an accord and satisfaction as to those taxes.

At the trial the defendant contended, among other things, that the use fuel tax lien is a lien against all trucks, owned by the user of the fuel, for the full tax liability incurred by the user irrespective of the truck in which the fuel was used. As to the cross-complaint, the cross-complainant (defendant) contended at the trial that the refund as to transportation taxes was made under the erroneous belief that Childress had not been the owner of the Mack truck dur-

ing the time it was operated in California preceding plaintiff's ownership of it, and that after making the refund the defendant had obtained information that Childress (not Siler) had been the owner of the truck preceding plaintiff's ownership.

The trial court concluded that all the use fuel tax liability of Childress for all periods prior to August 3, 1956 (when the truck was returned to Mack Trucks), was a lien upon the Mack truck when it was seized.

The court found, among other things, that although the record title of the Mack truck was held in the name of Siler (while Childress was using it), said title was a security device only, and it was the intention of the parties that the truck be owned by Childress, and it was in fact his property; that plaintiff Hillmert purchased the truck knowing that it had been operated in California by Childress who was the owner of it, and knowing that such operation may have resulted in unpaid use fuel taxes and transportation taxes which may have been a lien upon the truck; that plaintiff inquired of Childress and a representative of Mack Trucks concerning taxes due the State of California on the truck but did not inquire of the State Board of Equalization or take any other action to determine whether the truck was subject to a lien for taxes.

The Use Fuel Tax Law is in division 2, part 3, of the Revenue and Taxation Code (beginning with section 8601 and ending with section 9355). Code section references herein will be to that code, except as otherwise specified, and will be to sections in effect as of the time the tax liability involved here was incurred (1954 to 1956, inclusive).

Section 8651 of that code imposed an excise tax of seven cents for each gallon of fuel (except gasoline) used in a motor vehicle on the highway.

Section 8991 provided: "The excise tax, interest, and penalties are a lien upon and have the effect of an execution duly levied against any motor vehicle in which fuel taxable under this part is used."

The principal question on appeal with reference to the use fuel taxes is the proper interpretation of that section; particularly, the words "any motor vehicle in which fuel taxable under this part is used."

Appellant asserts the section means that the lien of the state for use fuel taxes is against the particular motor vehicle in which the fuel was used, and only against that vehicle.

In support of that assertion, appellant refers to certain sections which use the words, "the vehicle" and "such motor vehicle." Apparently, it is his argument that the use of those words in other sections, denoting the singular number, indicates that the Legislature in using the words "any motor vehicle," in section 8991, meant the lien was against a particular vehicle only. Such sections so referred to by appellant are, as follows: Section 8992 which provided that the "lien attaches at the time the vehicle is operated in this State." Section 8993 which provided that the lien shall not be removed until the tax is paid "or the vehicle subject to the lien is sold in payment thereof." Section 8994 which provided that the "lien is paramount to all private liens . . . and to the rights of any conditional vendor . . . in or to any such motor vehicle." The use of the words "the vehicle" and "such motor vehicle" in those sections does not exclude an interpretation of section 8991 to the effect that a lien for fuel used in different vehicles might be against one vehicle.

As opposed to appellant's argument, there are sections which indicate that section 8991 contemplated that a lien for fuel used in different vehicles might be against one vehicle.

Section 8995 provided that the "Department of Motor Vehicles may transfer the registered ownership of *any motor vehicle using fuel taxable under this part* only after a certificate of excise tax clearance has been issued by the board. The certificate may be issued after the payment of *all* amounts due under this part, according to the records of the board as of the date of the certificate. . . ." (Italics added.) Section 9011 is to the effect that when any user of taxable fuel is delinquent in payment of the tax *"obligations,"* the board may seize any vehicle subject to the lien and sell it *to pay the amount due.*

As above stated, section 8991 imposes a lien against "any motor vehicle in which fuel taxable under this part is used." That quoted phrase is descriptive of the type or kind of vehicle subject to the lien, that is, the type of vehicle which is subject to the lien is one in which taxable fuel (such as diesel oil) is used, as distinguished from the type of vehicle in which specifically exempted fuel (such as gasoline) is used. In view of the object intended to be accomplished by the Use Fuel Tax as indicated by all the provisions of this part, section 8991 is to be interpreted as meaning that each vehicle in which taxable fuel is used is subject to a lien for all the fuel tax liability of a user.

█ Appellant contends further that the refund of transportation license taxes was proper and was not made by mistake, and therefore the court erred in awarding judgment on the cross-complaint for recovery of the amount refunded. He argues that the Mack truck was owned by Siler when the transportation taxes accrued, and that Childress had no ownership interest in the truck. There was evidence to the effect that Siler, who was in the business of selling Mack trucks in Waco, negotiated a sale of the truck to Childress in November 1955, and because Childress' credit was not acceptable, the title to the truck was taken in Siler's name and an informal lease agreement was entered into between them whereby when a certain amount of money was paid by Childress the title would pass to him. Whether or not Childress had such an interest in the truck that a lien would attach thereto was a question of fact for the trial court. As above stated, the court found that although the record title to the truck was held in the name of Siler, such title was a security device only and that the truck was in fact Childress' property, and that plaintiff purchased the truck knowing that it had been operated in California by Childress who was the owner of it. Such findings were supported by substantial evidence. Section 10301 of the Revenue and Taxation Code provides that the controller may recover, in a court action, any refund which is erroneously made. It does not appear that the court erred in allowing recovery of the amount refunded.

█ Appellant contends further that section 8994, relating to the Use Fuel Tax Law, and section 10098, relating to the Motor Vehicle Transportation License Tax Law, are unconstitutional insofar as they purport to subordinate the chattel mortgage given by Siler to Mack Trucks; and said sections are unconstitutional as to appellant who purchased the truck from Mack Trucks. Section 8994 provided that the lien of the tax (fuel tax) "is paramount to all private liens or encumbrances of whatever character, and to the rights of any conditional vendor or any other holder of the legal title, in or to any such motor vehicle." Section 10098 provided in substance the same as section 8994, except that it pertained to "any motor vehicle the privilege of operating which is subject to the license tax." Appellant's argument is to the effect that by reason of such alleged unconstitutional provisions he was forced to pay the debts of a third person, that is, to pay Childress' taxes. The constitutionality of similar statutory provisions of the State of New York has been determined in

*International Harvester Corp.* v. *Goodrich,* 350 U.S. 537, 548 [76 S.Ct. 621, 100 L.Ed. 681, 691]. This contention as to unconstitutionality is not sustainable.

The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.